## WILLIAM BROWN *v.* THE PONTCHARTRAIN RAILROAD COMPANY.

Where, in consequence of the neglect of the agents of a railway company to chain or put blocks under the wheels of cars left standing on a track, constructed on a pier used as a public highway, one, who was crossing the track at a point over which it was necessary for him to pass in order to reach his vessel, moored to the pier, is, during a dark night, and without any fault on his part, run over and seriously injured by the cars, which had been put in motion by a strong wind, he will be entitled to recover damages to the extent of the injury sustained. C. C. 2294, 2295.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Schmidt* and *Roselius*, for the plaintiff, cited Civil Code, arts. 2294, 2295, 1928, § 3. 11 Toullier, No. 121, p. 153. Merlin Rep. vol. 26, *verbo* Quasi-Délit. Domat, vol. 1, b. 2, tit. 8, sect. 4. Ibid. tit. 9, Des Engagemens, &c., par des cas fortuits. 2 La. 73. 7 La. 575. West. Law Journal, vol. 1, No. 5, p. 203. Graham on New Trials, 417. Sayer's Law of Damages, 214, *et seq.* 2 Wilson, 205. 2 Wendell, 432. 17 Mass. Rep. 503. 9 Serg. & Rawl. 94. 2 Aiken, (Ver.) Rep. 255. 2 Hill, (S. Ca.) 573. 4 Hamm. (Ohio,) 500, 514. Wright, (Ohio,) 603. 4 Wash. C. C. Rep. 106. 4 Serg. & Rawl. 16. 7 Mass. Rep. 187. 7 Cowen's Rep. 485. 6 Petersd. Abridg. 634.

*Eustis*, for the appellants, cited *Lesseps* v. *Pontchartrain Railroad Co.*, 17 La. 362. *Fleitas* v. *Same*, 18 La. 339. *Chase* v. *Mayor et al.*, 9 La. 347. In the case of *Butterfield* v. *Forrester*, 11 East, 60, Lord Ellenborough, Chief Justice, says : "A party is not to cast himself upon an obstruction which has been made by *the fault of another* and avail himself of it, if he do not himself use *common and ordinary caution* to be in the right. In cases of persons riding upon what is considered to be the wrong side of the road, that would not authorize a person purposely to ride up against them. One person's being in *fault* will not dispense with another's using *ordinary care* for himself.— Two things must *concur, to* support this action—an obstruction in the road by the fault of the defendant, and *no want of ordi-*

*nary care to avoid* it on the part of the plaintiff." This was a case of an obstruction of *a highway*. See also *Barkley et al.* v. *New York Dry Dock Co.*, 2 Hall's R. 156. *Bush* v. *Brainard*, 1 Cowen, 78.

MORPHY, J. This is an action in damages for injuries sustained by the plaintiff, in consequence of the alleged carelessness and neglect of the company or its agents. The petition sets forth in substance, that the defendants obtained their charter of incorporation for the purpose of constructing a rail-road to serve as a communication and public highway between the city of New Orleans and Lake Pontchartrain ; that in order to render their charter more advantageous, the company was authorized to construct, and did construct harbors, piers, wharves, and breakwaters at the junction of said rail-road with Lake Pontchartrain, which works have been of great benefit to them ; that, as a consequence thereof a port of entry, known as Port Pontchartrain, has been established at that place; that the wharves thus constructed at the junction of the rail-road and the lake, are public highways and thoroughfares, necessary to the free communication with the port, and the land, as well as with the said rail-road; and that every body is entitled to the free and unmolested use of them, in so far as the rights and privileges of the company are not interfered with. The petition further charges that, on the 30th of August, 1842, the plaintiff arrived at the said Port Pontchartrain in a small vessel, which he used for the purpose of fishing and oystering ; that having secured his vessel, he proceeded ashore across the wharf of the company, to attend to his business ; that between the hours of seven and eight o'clock in the evening of that day, a thunder storm suddenly arose, accompanied with a heavy wind and rain, which rendered it necessary for him to look to the safety of his vessel ; that while he was proceeding towards his vessel, across the wharf of the company, with every possible precaution, he was knocked down and run over by several baggage cars belonging to said company, which had been heedlessly and without sufficient care, left standing on the wharf by the defendants, or their agents ; that by being thus knocked down and run over, he has suffered various wrongs and grievous injuries, and received wounds which put his life in danger, confined

Brown v. Pontchartrain Railroad Company

him to his bed for upwards of two months, and caused him to lose his left arm, which it became necessary to amputate, thus crippling him for life, disabling him from earning his bread, and entailing on him for the remainder of his days much pain and suffering. The petition avers, that all these sufferings and injuries are attributable to the neglect, remissness, and inattention of the company, or its agents, and that they, (the company,) are bound to indemnify him therefor; and it concludes with a prayer for damages to the amount of $6000, and for a trial by jury. The defendants pleaded the general issue. There was a verdict and judgment below in favor of the plaintiff for $4000. From this judgment the defendants have appealed, after an unsuccessful attempt to obtain a new trial.

The record comes up without any bill of exceptions to the evidence received on the trial, and may be considered as presenting only a question of fact, to wit, was the injury sustained by the plaintiff caused by the neglect of the company, or its agents? If it was, the law of the case is perfectly clear. Corporations, like natural persons, are liable for the wrongful acts and neglects of their servants, or agents, done in the course, and within the scope of their employment. Angel & Ames, p. 174. 5 La. 463. 11 La. 86. 1 Robinson, 178. Civil Code, arts. 2294, 2295. Merlin, Rep. vol. 26, *verbo*, Quasi Délit. The evidence shows, that on the night of this unfortunate occurrence, the wind, which began to blow very hard about 8 o'clock, put in motion and propelled two wood or baggage cars, which had been left on the wharf of the Pontchartrain rail-road, and which, it appears, had been neither chained nor secured by blocks. In their course, these cars knocked down and run over the plaintiff, who, in company with one Nelson, was at that moment walking on the wharf, and going toward the port at the end of the rail-road. As the night was dark, they were walking hand in hand, and feeling their way with their feet. When the accident happened, the plaintiff had just reached a place where the whole wharf is covered with rail tracks in every direction, and over which it was necessary for him to pass on his way to his vessel, about the safety of which he entertained fears on account of the storm which had just broken out. Had the cars been chained, or had

blocks been placed under the wheels to prevent them from revolving, this accident would not have happened ; and from the testimony of the defendant's own witnesses it appears, that this precaution was thought a necessary one, and that orders had been given to fasten or secure the cars every night, by placing fire wood or blocks under the wheels. This duty, it appears, was sometimes entrusted to a black man in the service of the company. It is not shown that it was performed on that particular night, although the rule was to block the cars every night. Some mention is made by the witnesses of a practice by which the fishermen were suffered to use the cars after dark to take their fish to town, and an inference is attempted to be drawn from it, that some of these men might have removed the blocks placed in front of the cars. This inference is considerably weakened, if not destroyed, by the improbability that the fishermen would have thought of taking their fish to town on such a windy and rainy night as that is described to have been. In the absence of any proof to the contrary, we must believe that the cars had not been fastened on that evening, as they should have been, and as they generally were, after dark. Had they been properly secured, it would have been impossible for the wind to propel them. For this neglect of their agents, the defendants are clearly answerable. The counsel for the defendants have referred to various authorities, and to our own decisions, to show that where, in cases of this kind, both parties are in fault, the party who claims damages cannot recover. Admitting the law to be as stated by the counsel, we cannot see how the plaintiff was in fault in the present case. He is represented by all the witnesses to have been sober on that evening, as he always was, being a man of sober and temperate habits. He was walking on the only road which could lead him to the place where his business called him. That way or road he had a right to use for the purpose of reaching the port where his vessel was moored, well knowing that no locomotive runs on the wharf after dark. Nothing would probably have befallen him, but for the neglect of the agents of the company, in not properly securing the cars on that night, as it is shown they were ordered to do every night.

As relates to the extent of the damages, the evidence shows, that the plaintiff, who is a ship carpenter, is about 46 years of age; that he can earn from $2.50 to $3.50 per day; and that in consequence of the loss of his arm, he is disabled from following his trade; that he has had heavy expenses to pay for medical attendance, hospital fees, &c.: Although the sum allowed by the jury may be considered as a very liberal one, we cannot say that, under the circumstances of this case, it is more than a compensation for the lasting injury and suffering inflicted upon the plaintiff. It is the peculiar province of the jury to assess the damages in cases of this kind, and with their finding we will not interfere.

. *Judgment affirmed.*