(51 South. 82.)

No. 17,532.

BLACK v. ROCK ISLAND, A. & L. R. CO. et al.

(Nov. 29, 1909. Rehearing Denied Jan. 17, 1910.)

*(Syllabus by the Court.)*

1. RAILROADS (§§ 303, 340*) — CROSSING STREETS—DUTY TO PUBLIC.

A corporation exercising a franchise to operate steam cars on tracks crossing the streets of a town incurs the correlative obligation to use such privilege with due regard to the public safety and to maintain its tracks in a safe condition, and it cannot escape liability for failure to discharge such obligation by transferring, or attempting to transfer, it to an employé or other person.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959, 1102–1104; Dec. Dig. §§ 303, 340.*]

2. RAILROADS (§ 340*)—LIABILITY FOR ACTS OF AGENTS.

A railroad corporation, being incorporeal and incapable of acting save through agents selected by it, when it places in the custody and under the control of certain agents so selected its depot, locomotives, and tracks, and vests in them the authority to operate the locomotives, over the tracks, with a certain discretion and subject to certain instructions, but with the actual power to operate them when they please, must be regarded as represented by such agents, within the sphere of authority conferred on them, and should be held liable to a third person, injured through the negligent, or improper use, or abuse, of the power and discretion vested in such agents.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1102; Dec. Dig. § 340.*]

3. RAILROADS (§ 340*)—LIABILITY FOR ACTS OF AGENTS.

Where the agents of a railroad company are placed in charge and control of its depot, locomotives, and tracks in a town, with authority to operate the locomotives over the tracks, for switching and other purposes (connected with the business of the company), and with actual power to operate them when they please, and the agents whilst operating them for their amusement across a street of the town negligently injure a citizen, who is legitimately using the street, such agents will be held to be acting, though improperly, within the scope of authority conferred on them, and the company will be held liable for the injury resulting from such action.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1102; Dec. Dig. § 340.*]

4. RAILROADS (§ 340*)—OPERATING LOCOMOTIVE ACROSS STREET—INJURY—SHIFTING OF RESPONSIBILITY TO AGENT.

The right to operate a steam locomotive on or across a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person who by its authority actually exercises it.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1102–1104; Dec. Dig. § 340.*]

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Action by Amos A. Black against the Rock Island, Arkansas & Louisiana Railroad Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Barksdale & Barksdale and Thos. S. Busbee, for appellants. Blackman & Overton, for appellee.

Statement of the Case.

MONROE, J. Plaintiff seeks to recover damages for personal injuries alleged to have been sustained through the fault of the defendants. Defendants deny, generally and specially, the allegations of the petition, and allege that plaintiff was a trespasser on their railroad, and was injured through his own negligence. There was judgment in the district court in favor of plaintiff for the sum of $17,000, with interest, and the defendants, the Rock Island, Arkansas & Louisiana Railroad Company and Chicago, Rock Island & Pacific Railway Company, have appealed.

It is shown by the evidence in the record that, when he received the injuries of which he complains, plaintiff was about 39 years of age, and that his expectation of life was 28.9 years; that he had been in the railroad service for about 20 years; that a few years prior to the occasion in question he had lost all the fingers (save the little finger, which was left twisted) and the thumb of his right hand; that he was never drunk in his life;

that prior to the accident in question, notwithstanding the condition of his right hand, he had been earning from $75 to $110 per month as a switchman in the employ of the Illinois Central Railroad Company; that on December 31, 1907, being in the town of Lecompte, he was invited by Louis Peterson, master mechanic in defendant's employ, to come down to the railroad yard that night to celebrate the old year out and the new year in, and that a little before midnight he started in the direction of the yard, in company with several other men, who, however, walked faster than he, so that they reached defendant's railroad tracks at a point where they (four of them) cross Gordy street, some distance ahead of him; that Gordy street is a public street of the town, and that plaintiff used it in approaching the tracks which cross it; that the night was quite dark, and that the crossing was not lighted; that just before he reached the crossing an engine, with a tender and a flat car behind it, had passed across the street (from the direction of defendant's depot, which is situated about 50 feet to the north of the street), going in a southerly direction; and that about the time that defendant arrived near the crossing there were in the vicinity some five engines, the whistles of which were blowing and the bells of which were ringing. It is also shown that some railroad torpedoes had been, and were being, exploded, probably, by the train to which we have referred, whilst on its trip to the southward; that a "fusee" was burning at some point to the west side of the tracks, and that a bonfire was or had been burning to the southwest of the crossing at a distance of 120 or 125 feet, but that neither the fusee nor the bonfire served to light the crossing; that plaintiff in attempting to cross the tracks was struck by the train, which, having gone southward shortly before, was then returning to the northward in the direction of the depot with the flat car in front;

that there were no lights or lookouts on the train, whether upon the engine or upon the flat car; that no warning was given to plaintiff; and that as the result of the accident plaintiff lost his left arm near the shoulder, had one of his ears torn partly off, was injured in the face, and more seriously in the back, and is, and will be hereafter, unable to perform any physical labor by which to earn a livelihood. It is also shown that he was laid up for several months, incurred considerable expense, and suffered greatly, both physically and mentally. It is further shown that defendant's road was at that time in process of construction, and that the ranking officer in this state was Col. Knobel, a civil engineer, who had charge of the work of construction; that different branches of the work were under the supervision of different persons; that the motive power and rolling stock, including the engines and cars at the depot, were under the control of Clint Fausnacht, save that, when they needed repairs, they were turned over to Louis Peterson, the master mechanic; that a switching crew was maintained at the depot, and did a great deal of switching across Gordy street, being sometimes so engaged all night; that Fausnacht and a fireman, by the name of Curtis Earnest, were on the engine of the train by which plaintiff was hurt, and that Earnest was running it, and it is also shown that Louis Peterson was present. Fausnacht and Peterson were employed and paid by the month, but Earnest was paid by the hour, and Col. Knobel testifies that the pay rolls do not show that he was paid for the hour in which the accident out of which this litigation arises occurred. Plaintiff testifies that, when he approached the tracks, he looked up and down and saw no car, and, whilst the other men who had preceded him and had crossed the tracks in front of the locomotive seem to have seen it (in fact, one of them had got on it), they concur, in saying

that the night was dark. The failure of plaintiff to see the train may therefore, perhaps, be accounted for by the fact that as it approached him the flat car, which, as we take it, was less conspicuous than the locomotive, was in front. Col. Knobel also testifies that he was at his place of residence, some distance away, and, hearing the noise, came out of the house and started in the direction of the depot; but being told that the men were merely celebrating, and discovering that the fire which he saw was merely a bonfire, and the noise ceasing about that time, he returned to his quarters, and did not hear of the accident until the next day, when he reprimanded Fausnacht and Peterson.

### Opinion.

We are of the opinion that the accident was attributable to the gross negligence of the persons who ran an engine and car without lights or lookouts across the street of a town on a dark night, and that the evidence adduced fails to show any contributory negligence of the party injured which should preclude him from recovering damages.

There is really no positive testimony in the record as to the purpose of Fausnacht and Earnest in moving the train (as, for convenience, we shall call the engine and car) by which plaintiff was struck out of the depot, but the inference is that it was done merely by way of celebrating the occasion, and, with that view, of running over and exploding certain torpedoes which had been laid on the track, and that apparently was accomplished as the train passed down. When, however, plaintiff was injured, defendant's employés were engaged in taking the train back to the depot, where it belonged, and the basis upon which the learned counsel rest their argument, that defendants cannot be held liable because, when the injury was inflicted upon plaintiff, their employés, to whose negligence it was attributed, were not engaged in the discharge of any service to them, or within the scope of their employment, disappears entirely; for, conceding that, in taking the train out of the depot merely for their own amusement, the men whom defendants had placed in charge of it were rendering no service to defendants and were doing nothing that they were employed to do, it can hardly be denied that their duty to defendants as custodians of the property required that it should be returned to the place from which they had taken it. If this be regarded as a narrow basis for the conclusion that the defendants should be held liable in the premises, it may be answered that it is at least as wide as that upon which the defendants rest the proposition that they should be exempted from liability because the men placed by them in actual custody and control of their cars and tracks to be used when defendants' interests required were, at the moment, making use of the power so conferred for purposes of their own, from which, it would follow logically that if the conductor of a train arriving at a station ahead of the schedule time should, for his own convenience, move it a few feet or inches from where it originally stopped, and in doing so negligently inflict injury upon a third person, the owner of the train would incur no liability, though for an injury so inflicted before and after such movement the liability might be conceded.

The broader, and as it seems to us correct, view of the case presented is that defendants, being vested with a franchise (that is to say, a privilege conferred upon them by the state, and not enjoyed by citizens generally of common right), by virtue whereof they were authorized to lay their tracks across a public thoroughfare in an incorporated town, and to operate cars propelled by steam power thereon, incurred certain correlative obligations, and among them the obligation to use their franchise with due regard to the

public safety. The implied condition upon which they were allowed to lay their tracks across a street which is open to the public was that they should keep the tracks in a safe condition, and that neither they nor those for whose acts they are responsible should operate their cars over them in a manner unnecessarily to endanger the lives or limbs of those who had the right to use the street. The defendants themselves, being mere intellectual and intangible creations, have no capacity to act otherwise than through their human representatives, and they can be present at the place where their interests or obligations require that they shall be present, and there act only through such representatives; and, on the other hand, when they authorize certain actual persons to represent them at a particular place and time with respect to such interests and obligations, and the persons are there, discharging the functions for which they are authorized, the corporations themselves are there discharging those functions in the only way in which they can discharge them, and the acts of the persons representing them are the acts of the corporations. The defendant corporations were in possession of their depot at Lecompt and of their motive power and of their rolling stock through Fausnacht. It is true that Fausnacht was subject to the orders of Col. Knobel, the engineer in charge of the construction of the road, but it is also true that Fausnacht was vested with a certain discretion, and with all of the actual power, with regard to the use of the motive power and cars, which were in his custody, over defendants' tracks; and, as Col. Knobel was subject to the orders of a superior officer in Chicago, it would be as reasonable to say that the corporations were not present in Louisiana through him as to say that they were not present at the depot through Fausnacht. But let us say that defendants were not present at the depot, that they were merely represented by subordinate employés, who, whilst entrusted with the absolute physical custody of the depot and tracks and of five "live" locomotives (i. e., locomotives with steam in their boilers) and other rolling stock, were limited as to the manner in which the property should be handled by their instructions, or lack of instructions. We know that those employés who might under their instructions have taken all of the locomotives out for switching purposes took one of them with a flat car attached, and, having no light of any kind on the train thus made up, ran down the plaintiff in the street, where he had as much right to be as they, and so injured him that he will be unable for the balance of his life to put on his own clothing. If the defendants had left one of their locomotives, alive or dead, on the street, and an inquisitive child had been injured whilst meddling with it, they would have been liable for the consequences; and, if that be true, why should they not be liable for the injury inflicted by the same locomotive through the gross negligence of the persons in whose custody they left it upon a person who was not meddling with it when injured, but was merely exercising his right to walk along the highway? There is no room here for the application of any fellow servant doctrine, for plaintiff was not in defendant's employ, and, as between him and them, the responsibility for the character and capacity of their employés rested entirely upon them. It was they who selected Fausnacht and Peterson and the switching crew and placed them in charge of their live locomotives, cars, and tracks, and it is they who should be held responsible for the acts of commission and of omission of the agents so selected in the handling of that property, with its capacity, when improperly handled, to inflict death and destruction. The agents mentioned were authorized to take the locomotives out of the depot, and to cross and recross Gordy street

all night long with them, and, if they had exercised that authority for the purpose of switching cars, it is conceded that they would have been acting within the scope of their employment. Defendants do not deny that they (the agents) were authorized to take out the locomotives, but they say that in taking them out for their amusement they did not rightfully use their authority, and hence that they (defendants) are not liable for the consequences to plaintiff.

This court has said, however (in a case upon which defendants seem to rely), that the earlier doctrine "that in general a master is liable for the fault or negligence of the servant, but not for the willful wrong or trespass, has been greatly modified in modern jurisprudence, which places the test of the master's liability, not in the motive of the servant or the character of the wrong, but in the inquiry whether the act done was something which his employment contemplated and which, if properly and rightfully done, would have been within the scope of his functions." Williams v. Pullman Car Co., 40 La. Ann. 87, 3 South. 631, 8 Am. St. Rep. 512.

Summing up our conclusions, upon the law of the case, we are of opinion that:

1. A corporation exercising a franchise to operate steam cars on tracks crossing the streets of a town incurs the correlative obligation to use such privilege with due regard to the public safety and to maintain its tracks in a safe condition, and it cannot escape liability for failure to discharge such obligation by transferring, or attempting to transfer, it to an employé or other person.

2. A railroad corporation, being incorporeal and incapable of acting save through agents, when it places in the custody and under the control of certain agents selected by it its depot, locomotives, and tracks, and vests in them the authority to operate the locomotives over the tracks with a certain discretion and subject to certain instructions, but with the actual power to operate them when they please, must be regarded as represented by such agents within the sphere of authority conferred on them, and should be held liable to a third person injured through the negligent, or improper use, or abuse, of the power and discretion vested in such agents.

3. Where the agents of a railroad company are placed in charge and control of its depot, locomotives, and tracks in a town, with authority to operate the locomotives over the tracks for switching and other purposes (connected with the business of the company), and with actual power to operate them when they please, and the agents, whilst operating them for their own amusement across a street of the town, negligently injure a citizen, who is legitimately using the street, such agents will be held to be acting, though improperly, within the scope of the authority conferred on them, and the company will be held liable for the injury resulting from such action.

4. The right to operate a steam locomotive on, or across a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person, who, by its authority, actually exercises it.

These conclusions, we think, find support in the following authorities to which we have been referred by counsel for the plaintiff, to wit:

Webb's Pollock on Torts, pp. 84–86; Commentaries on the Law of Negligence (Thompson) §§ 519, 589; Salisbury v. Erie R. Co., 66 N. J. Law, 233, 50 Atl. 117, 88 Am. St. Rep. 480; Nelson v. Railroad Co., 49 La. Ann. 491, 21 South. 635; Evans v. Lumber Co., 111 La. 534, 35 South. 736; Brown v. Ponch. R. Co., 8 Rob. 45; Cleveland, C. & C. R. Co. v. Keary, 3 Ohio St. 210; Barmore v. Vicksburg S. & P. R. Co., 85 Miss. 426, 38

South. 210, 70 L. R. A. 627; Phil. & Reading R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502; Thompson on Negligence, §§ 522, 523, 532; Cooley on Torts, §§ 120, 536; Wharton on Negligence, § 160; Toledo, W. & W. R. Co. v. Harmon, 47 Ill. 299, 95 Am. Dec. 489; Pittsburg, etc., R. Co. v. Shields, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840; Euting v. Chicago & N. W. R. Co., 116 Wis. 13, 92 N. W. 358, 60 L. R. A. 158, 96 Am. St. Rep. 936.

Counsel for defendants have also cited many authorities, but no good purpose would be subserved by reviewing them or attempting to show farther than we have done why we cannot agree with those which support their contentions. A portion of their brief is devoted to an effort to show that plaintiff's petition fails to disclose a cause of action, but, as they rely upon their view of the law, which we have discussed in the foregoing opinion, it is unnecessary that we should consider it farther than to say that the petition is an uncommonly long one and states all the facts connected with the accident in great detail, that it alleges specifically that plaintiff's injuries, minutely set forth, were caused in the manner described through the "wanton, willful, gross negligence of defendants, their agents, and employés, without any fault or contribution thereto whatsoever by the plaintiff."

Judgment affirmed.