THOMPSON, J.
The plaintiff was run into and seriously if not permanently injured by a motor delivery truck owned by the de-, fendant firm and in charge of one of its employees. She sues the owner of the truck for $5,000 damages for the injury.
Among the defenses, and, we may say, the only real defense, is that at the time of the alleged injury to the plaintiff the driver of the truck was without the scope of his employment', and was on his own-personal mission for the accommodation of a friend or relative, and which had no connection with the business of his employer. This defense was sustained by the trial judge, and his judgment was affirmed by the Court of Appeal. The case is before us on a writ of review granted.by this court under section 11, art. 7, Constitution of 1921.
There is no serious controversy as to the material facts in the case. The defendant firm wás engaged in the retail grocery and feed business in the town of Leesville. The deliveries from the store to the firm’s patrons within the town were made by a motor-truck owned by the firm. But few, if any, deliveries were made beyond the limits of th§ town, at least not as far out of the town as two miles.
On the day of the accident, about 10 o’clock; and after the morning deliveries had been made, the firm’s driver of the truck, Tom Mitchell, was- requested by Volney Mitchell (presumably a kinsman of the chauffeur) to make a trip with the truck out to one Jim Turner’s, two miles from tpwn, to get some meat for said Volney Mitchell. Neither member of the firm was present at the store at the time, and the chauffeur says that Roy Brown, a clerk in the store, told him that it would be all right for him to make the trip for Volney Mitchell. Brown denies emphatically that he gave Mitchell *480 any such permission. However, the trip was made to Turner’s, and the meat was obtained.
On the way back the chauffeur let ope Lonnie Redmond operate the truck. He was without any experience in handlihg motor vehicles, and utterly incompetent. When they got near the town limits, the truck, due to the inexperience and gross negligence of Redmond, swerved to the extreme edge of the road on the side where plaintiff was traveling and going in the same direction, struck her, and knocked her into a ditch, causing the injuries she complains of.
There is not the slightest doubt that the mission of Mitchell in going out to Turner’s was Without the knowledge, authority, or consent of the defendant, and was wholly and completely beyond and outside of the business for which the driver was employed to use the truck. Mitchell says that the trip he made was in no- manner connected with his employer’s business, and was made by him merely to accommodate Yolney Mitchell. McAlpin, ,one of the firm, says that Mitchell had no authority from the firm to make the special trip to Turner’s, and that he made said trip on his own responsibility. Mr. Roy Brown, the clerk in the store, says that he gave Mitchell no permission to make the trip, and that he was without authority to do so. Indeed it is conceded by counsel for plaintiff that, if Brown, the clerk, did not authorize Mitchell to make the trip, Mitchell, in going out to Turner’s abandoned his relation as employee of defendant, and that if the accident had occurred on the out-going trip there would have been no liability attached to the defendant.
But it is contended that the chauffeur, Mitchell, was authorized by Brovin, and, if he was not so authorized, the relation of employer and employee was resumed when Mitchell had accomplished his mission and was returning to attend' to his usual deliveries. ' ,
The trial judge and the Court of Appeal found as a fact that Mitchell was not authorized by Brown, and we find no difficulty .in reaching a like conclusion.
In Cusimano v. Spiess Sales Co., 153 La. 551, 96 South. 118, we held that, where a master’s servant turned aside from his employer’s business for some purpose of his own, but at the moment of the accident he had fulfilled his own purpose and was then in the act of attending to the business of his master, the latter’s liability for the servant’s acts reattached. And thi& seems to be in line with the holdings of our own court as well as the courts of other jurisdictions. Duffy v. Hickey, 151 La. 274, 91 South. 733; Barmore v. V. S. & P. Ry., 85 Miss. 426, 38 South. 210, 70 L. R. A. 627, 3 Ann. Cas. 594; Riley v. Standard Oil Co. of N. Y., 231 N. Y. 301, 132 N. E. 97, 22 L. R. A. 1382. Ruling Case Law, vol. 18, p. 797, states the principle as follows:
“And where the servant has made a temporary departure from the service of his master, and the object of that departure has been accomplished and the servant re-engaged in the discharge of his duty, the responsibility of the master for the servant’s acts immediately attaches.”
There would seem, therefore, to be no doubt of defendant’s liability if the mission of Mitchell to Jim Turner’s had been completed and as Conneetion with the business of defendant had been re-established at the time of the accident; and, in order to constitute a re-entry upon the business of the master under such circumstances, it was not essential for the servant to have reached the zone of his employment or the territory in which he was employed to make deliveries. As was stated in the Cusimano Case, supra:
“And the authorities hold that, when the servant, having completed the purpose for which he turned aside, is returning to resume his duties, he is, whilst so returning, engaged in the business of his master.”
*482 We have referred to the matter of attaching liability of the master for the torts of his servant, where resumption of the relation of master and servant has been accomplished after temporary suspension by reason of the abandonment of the field of employment by the servant, for the reason that counsel for plaintiff contends that the plaintiff’s case falls within the principle announced, and for the further reason that the case was ordered up for review on the theory that the Court of Appeal had held that no liability attached to the master unless and until the servant actually resumed the duties of his employment.
As a matter of fact, the evidence does not bring the plaintiff’s case under the rule laid down in the authorities cited. The act of Mitchell, the servant, was entirely disassociated with his employment and his duties to his employer from the time he started on his mission until the moment of the accident. There was no relation between the errand or trip to Turner’s for the meat and the delivery of groceries to the defendant’s customers. There was plainly no departure — no temporary turning aside — from the master’s business to engage in a matter concerning the chauffeur, and there could be no resumption of the master’s business because the errand had not been completed. The chauffeur left the store with the truck, not to deliver groceries for defendant, but for the sole purpose of going to Turner’s for some meat for Volney Mitchell. He made no deliveries and did not purpose to deliver any groceries on the out-going, trip. When he got to Turner’s and received the meat he started on his return, not to engage in his employer’s business, but to complete his own business for Volney Mitchell — to deliver the latter’s meat.
The meat was not delivered — the independent mission was not completed — when the accident occurred. When the chauffeur started on his return trip, his independent mis-' sion was only half completed, and was not wholly completed until delivery of the meat was made, which was after the accident. Nor can it properly be said that on the return trip there was a combined purpose to complete the mission for Volney Mitchell and to engage in the defendant’s business. The return trip with the meat had to be made; it was a duty to Volney Mitchell which the chauffeur had assumed. We cannot, in the absence of any testimony to that effect, presume that the chauffeur intended to deliver any groceries before discharging his duty to Volney Mitchell.
The fact having been established that Mitchell had abandoned his employer’s business the very moment that he started on the mission for Volney Mitchell, the burden was with the plaintiff to show that 'the independent errand had been accomplished, and that the servant was returning to resume his service with his' employer; and this the plaintiff has failed to do.
The chauffeur says he had some groceries in his truck, but he failed to say, and he was' not asked, whether he delivered any groceries or had any to deliver from the time he left the store to go to Turner’s until the accident happened; and there is no proof in the record to that effect. If there were any groceries to be delivered, and if the chauffeur had any groceries in his truck for delivery, that fact and the names of the parties to whom they were to be delivered could have been easily and conclusively established, and not left to a bare inference, weak within itself, to be drawn from the statement of Mitchell, the driver, that he had some, groceries in the truck.
^SVe find no sufficient reason to disturb the judgment of the Court of Appeal, and the sanie is affirmed at the cost of plaintiff.'
Rehearing refused by Division A, composed of O’NIELL, C. X, and ROGERS and BRU-NOT, JJ.