No. 10,677

Orleans.

**BOWLES vs McGLASSON, Appellant**

(January 17, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. Louisiana Digest—Automobiles—Par. 6 (a).

However much or long a chauffeur may deviate from the course of his employment in order to serve his own purposes, yet his employer will be liable if, on returning to his employer's garage and on his way there, his chauffeur negligently runs into and injures another automobile.

2. Louisiana Digest—Automobiles—Par. 6 (a).

Nor will the employer be released by the circumstance that the chauffeur, at the time of the injury, had taken two persons in the automobile to drive them to a point on his return route.

(Civil Code, Article 2315. Editor's note.)

Appeal from First City Court. Hon. Val J. Stentz, Judge.

Action by Joseph Bowles against E. W. McGlasson.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Robert Sere, Jr., of New Orleans, attorney for plaintiff, appellee.

Jno. May, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J. Plaintiff claims of defendant $292.50 for damages done to his

automobile by defendant's automobile driven by defendant's chauffeur.

The plaintiff alleged that on January 31, 1926, at about 3:45 a. m., his automobile was parked near the curbing on the right-hand side of Dryades street, between Josephine and St. Andrew streets, facing downtown in the direction of Canal street; that while so parked he was run into by an automobile owned by the defendant, McGlasson, and driven at the time by Riley W. Coleman, his chauffeur, acting in the scope of his employment and with the consent of defendant; that at the time of the accident the defendant's automobile was proceeding up Dryades street on the left side of the street contrary to the traffic laws; that the damage to plaintiff's automobile was caused solely by the negligence of defendant's chauffeur; that the damage amounted to $212.50 and plaintiff was deprived of the use of his automobile, causing him a loss of $80.00.

The defendant admitted that plaintiff's automobile was run into and damaged in the manner, and at the time and place, stated in the petition, but denied all the other allegations; he "specially averred that at the time of the accident Riley W. Coleman was not driving said automobile within the scope of his employment in that he was driving said machine on a mission of his own and for the accommodation of himself and some friends or relatives which had no connection with his employment as chauffeur for the defendant, and that on the night of the accident the defendant was confined to his bed as the result of an attack of pneumonia; that he was in an unconscious condition and that he did not grant Riley W. Coleman, his chauffeur, permission to use his, defendant's, automobile".

There was judgment for plaintiff for $212.50 and the defendant has appealed.

The facts of the case are as follows:

The defendant's residence was at the corner of Washington and Prytania streets, where he lay sick and unconscious on the day of the accident; Riley Coleman was his chauffeur and still is; on the night of January 31, 1925, at about eight o'clock, he got into the defendant's automobile to drive home the defendant's nurse, Mrs. Gage, with the permission of the defendant; they stopped on Louisiana Avenue, between Carondelet and St. Charles streets, where Miss Gage bought some apples which she told him to take to his wife at the Charity Hospital; when he got there his wife was feeling bad; he picked up there his brother and sister-in-law; on his way home he stopped at his cousin's house on Dryades street, between Julia and Howard Avenue; it was some minutes after four in the morning when he left; he left to put the car in defendant's garage; he took in his car his brother and sister-in-law, as they asked him to take them to Dryades and Jackson streets where they were going to take the street car and he was going out St. Charles street to put up the car; it was on his way to the garage that he struck the plaintiff's car while they were all three in his automobile; after dropping his sister and brother-in-law he intended to put up his car and then go to his house on Jackson, between Josephine and Willow; he had no understanding with the defendant as to what he was to do with the car after he deposited Mrs. Gage on Louisiana Avenue near Carondelet, as the defendant was unconscious; he had been ill several weeks before; Mrs. Gage was the nurse attending the defendant.

The following question was put to the chauffeur:

"Q. Did you take her to her home?
"A. No; she went to a market and bought some apples and oranges for me to

carry to my wife and I took them to her and from there I took her home and then I took the car and brought the apples to my wife."

Coleman does not sleep on the defendant's premises, unless the latter is sick, when he sleeps there to be at hand. At the time of the accident he was showing his sister where his step-sister lived

Miss Marie Gage testified that she is a registered nurse; that she was engaged on December 27 to nurse the defendant, who was sick with pneumonia; he was very ill; on the evening of January 31 the defendant did not know what was going on; when she was relieved from duty she took defendant's car; Riley always drove her home; she went to Hill's grocery and bought some fruit for Bertha, defendant's maid and Coleman's wife, who was sick at the Charity Hospital, and she told Coleman to take it to her; Coleman took her home and she sent him to the hospital with the fruit.

"Q. While you were in attendance at Mr. McGlasson's residence you had full charge of the car and house?
"A. Yes, I had the car at any time.
"Q. It was understood Riley was under your instructions?
"A. Absolutely."

The insurance company denied liability "on the ground there was no agency".

It was admitted that if examined as witness Baker and his wife would testify that they met Coleman at the hospital and went with him to his cousin's house on Dryades street, between Julia and Howard, and that they left there at about 3:30 in the morning and that Coleman left them out at Jackson and Dryades.

The sole question in the case is whether the defendant's chauffeur, Coleman, at the time of the accident as contended by plaintiff was driving the car for defendant as his servant and within the course of his employment. C. C. 2320. If he was, then the defendant is liable; if he was not then the defendant is not liable, C. C. 2320, 110 So. 324; Cusimano vs. Durnin, No. 7457 Orl. App.; Rapier vs. Troxclair, 1 La. App. 763.

It must be admitted that when the chauffeur, Coleman, started to drive Miss Gage, the defendant's nurse, from the defendant's residence to her own home he was acting within the course of his employment and in the interest of the defendant and with his permission. It may be assumed that after he reached the nurse's home and when he drove the automobile to the hospital, and thence to his cousin's residence on Dryades street, that he ceased to be acting for defendant and began to act for himself. But as soon as he left his cousin's house and turned his car back towards its garage at defendant's home, then he resumed his employment, for it was his duty to return the car to the garage at his employer's home and he was so doing. It was after he left his cousin's house, and while he was driving the car back to the garage as it was his duty to do that he ran into the plaintiff's car. For his negligence in so doing the defendant is liable. In Cusimani vs. Spies, 153 La. 551, the court said:

"Master not liable for acts of servants in own interest.
"Masters' liability reattaches when servant resumes duties.
"Master held liable when servant had fulfilled own purpose and was returning to resume duties."

Affirmed in Glass vs. Wise, 155 La. 477, 99 South. 409, wherein it was said: "To re-enter master's business after deviation servant need not have reached zone of employment."

Nor does the fact that Coleman, at the time of the accident, had his two relatives in the automobile and was conducting them to a point on his way home affect the situation. Coleman was still driving returning to his employer's garage.

We consider the two cases quoted above as binding upon us.

See also 39 C. J. 1285; Duffy vs. Hickey, 151 La. 274, 91 South. 733; 190 Mo. App. 105; Berry on Autos, p. 721, 741-97 S. C. 171, 218 Mass. 17.

The amount of the damage done to plaintiff's automobile is sufficiently established by the witness, Ray Houston. He testifies that it would cost $212 to repair plaintiff's car, according to a detailed bill made by Reuther annexed to the petition. The defendant did not attempt to show that the bill was not necessary or reasonable.