GOLDMAN v. YELLOW CAB CO. ET AL.

———

(April 27, 1931. Opinion and Decree.)
(May 25, 1931. Rehearing Refused.)
(October 6, 1931. Writs of Certiorari and
Review Refused by Supreme Court.)

———

Dart & Dart, Louis C. Guidry and Robert Ewing, Jr., of New Orleans, attorneys for Milton Goldman, plaintiff, appellee.

John P. Sullivan and David Sessler, of New Orleans, attorneys for Yellow Cab Company, defendant, appellee and appellant.

Eraste Vidrine, of New Orleans, attorney for Emile J. Burvant, defendant, appellant.

WESTERFIELD, J. The plaintiff, Milton Goldman, while a passenger in a taxicab belonging to the Yellow Cab Company of New Orleans, Inc., was injured as a result of a collision between the taxicab and an automobile belonging to Emile Burvant and, at the time of the accident, driven by a chauffeur in his employ, by the name of Duplesis.

The accident occurred on Mardi Gras night, March 1, 1927, at the intersection of Conti and Decatur streets. Plaintiff brought this suit against the taxicab company and Burvant in solido for damages.

The taxicab company defended upon the ground that its chauffeur was free from fault, the accident, according to its view, having been entirely due to the carelessness of the driver of the Burvant car. Burvant denied that his chauffeur was guilty of negligence and interposed the legal defense that, at the time of the accident, Duplesis was not acting within the scope of his employment but upon a mission of his own.

After a trial upon the merits which was had some three years after the accident and, in which an unusual number of eye-witnesses participated, the trial court found Duplesis alone at fault and held Burvant responsible for the result of his chauffeur's negligence, awarding judgment against him in the sum of $1,081. Plaintiff and Burvant have appealed.

Insofar as the question of fact upon which liability for the accident depends is concerned, after examining the voluminous transcript, we are convinced that the issue was properly determined below. We can add nothing to the analysis of the testimony given by the able trial judge in his reasons for judgment on this point and we adopt his views as our own.

The legal question raised by the defendant Burvant and earnestly pressed by his counsel in argument and brief before us is not so easily disposed of. It appears that on the night of the accident Duplesis had been given instructions to convey Mrs. Burvant and her brother to a point on Iberville street near Decatur street in order that they might witness a Mardi Gras parade which was to pass in that vicinity. When the car reached its destination Mrs. Burvant and her brother alighted and instructed the chauffeur to wait for them, ordering him to lock the switch and park the car. Instead of doing as he was told, Duplesis drove the car to a poolroom on Elysian Fields avenue where he met several friends with whom, according to the effect of certain testimony, he had a few drinks and, after sitting a while in the poolroom he, and his friends, entered the car and started back to the point where he had left Mrs. Burvant and her brother for the purpose of taking them home. When he reached the intersection of Conti and Decatur streets, about two city squares from his destination, the accident occurred.

It is the contention of counsel for Burvant that at the time of the accident Duplesis was out of character as an employee of Burvant and on his own responsibility using, without permission, his employer's automobile; that in going to and in coming from the poolroom Duplesis was not the servant of Burvant, the relation of master and servant being suspended until he returned to the point of departure. It is insisted that the case is within the holding of Glass v. Wise & McAlpin, 155 La. 477, 99 So. 409, 410. In the case relied on, the facts were as follows: Wise & McAlpin, a partnership, engaged in the real estate, grocery and feed business in the town of Leesville, Louisiana, employed a man by the name of Mitchell to drive their truck. On one occasion, without the knowledge or consent of his employer, Mitchell took the truck, and accompanied by a friend also named Mitchell drove a distance of two miles from town to get some meat for his friend. On the return trip because of the negligent handling of the truck an accident occurred as it neared the town limits, in which Glass was injured. Glass was denied recovery as against Mitchell's employers because:

"The act of Mitchell, the servant, was entirely disassociated with his employment and his duties to his employer from the time he started on his mission until the moment of the accident. There was no relation between the errand or trip to Turner's for the meat and the delivery of groceries to the defendant's customers. There was plainly no departure—no temporary turning aside—from the master's business to engage in a matter concerning the chauffeur, and there could be no resumption of the master's business because the errand had not been completed. The

chauffeur left the store with the truck, not to deliver groceries for defendant, but for the sole purpose of going to Turner's for some meat for Volney Mitchell. He made no deliveries and did not purpose to deliver any groceries on the out-going trip. When he got to Turner's and received the meat he started on his return, not to engage in his employer's business, but to complete his own business for Volney Mitchell—to deliver the latter's meat."

The court discussed Cusimano v. Spiess Sales Co., 153 La. 551, 96 So. 118, distinguishing it upon the ground that the facts were different. The holding in the Cusimano case was to the effect that a servant, who had turned aside from his employer's business for a purpose of his own, and, after fulfilling that purpose, was returning to resume his master's business was in the master's employ while so returning whether he had reached the zone of his employment or the territory in which he was employed or not.

In the case of Bowles v. McGlasson, 5 La. App. 367, we held the master responsible upon the authority of the Cusimano case. The facts in the Bowles case were as follows: Riley Coleman, McGlasson's chauffeur, was instructed to drive McGlasson's nurse, Mrs. Gage (McGlasson being ill at the time) to her residence. Before reaching Mrs. Gage's home a stop was made to purchase some apples to be taken to the Charity Hospital where Coleman's wife lay ill. After buying the apples Coleman took Mrs. Gage home and then drove to the hospital where he found his brother and sister-in law. He invited his relatives to get in his employer's automobile and drove them to his cousin's house on Dryades between Julia street and Howard avenue, where he remained until 4 o'clock in the morning, more than eight hours having elapsed since he started from his employer's residence for the purpose of taking Mrs. Gage home. Coleman then, with his two relatives whom he intended to drop on the way, got back in the automobile and started for McGlasson's home. On the way an accident occurred which was held to be due to his negligence. We held McGlasson responsible for the acts of his servant, Coleman, in that case because "as soon as he left his cousin's house and turned his car back towards its garage at defendant's home, then he resumed his employment, for it was his duty to return the car to the garage at his employer's home and he was so doing."

It is our opinion that the case at bar cannot be distinguished from the Cusimano and the Bowles cases. Indeed, the facts of the instant case are far stronger from the plaintiff's standpoint than those of the Bowles case. The departure of Duplesis during the short period that Mrs. Burvant was viewing the parade was but slight as compared with the numerous private errands of Coleman, the chauffeur in the Bowles case.

In this case, unlike the situation which obtained in the Glass case, the chauffeur started upon an errand of his master and his private excursion was but a departure, consequently he re-entered his employer's service when he started upon the return trip but in the Glass case the truck was taken out for a purpose disconnected with his employer's business and it could not be said that Mitchell, the chauffeur in that case, re-entered his employer's service until the truck was put back into the garage and his private errands completed.

The master's liability attaches only where there has been a deviation from an enterprise originally undertaken in the interest of the employer.

"If the master is liable where the servant has deviated it must be where the deviation occurs on a journey on which the servant had originally started on his master's business." 39 C. J. 1303.

However, neither the Cusimano nor the Bowles cases which appear to us as ample authority to sustain the position of plaintiff in this case have gone as far in holding the master liable for the acts of his servant as Black v. R. I. A. & L. R. Co., 125 La. 101, 51 So. 82, 83, 26 L.R.A. (N. S.) 166. In that case plaintiff was injured by being run into by an engine belonging to the defendant railroad which at the time of the accident, was in charge of two of its employees who had taken the engine out of the yard for their amusement and for no purpose in connection with their employment. There had been no initial movement of the engine upon an errand of the master but first and last for a purpose of the employees, nevertheless, the court held that in returning the engine (the accident happened on the return trip) to the depot they had re-entered their employer's service for "conceding that in taking the train out of the depot merely for their own amusement, the men whom defendants had placed in charge of it were rendering no service to defendants and were doing nothing that they were employed to do, it can hardly be denied that their duty to defendants as custodians of the property required that it should be returned to the place from which they had taken it."

If the doctrine of the Black case has not been weakened by subsequent jurisprudence, and we know of no qualifying adjudication, there is more than ample authority to sustain plaintiff's position in this case, for it must be conceded that in order for the plaintiff to recover in the Black case, it was necessary to go beyond the doctrine of the Cusimano and Bowles cases, the Cusimano case being largely predicated on the Black case and the Bowles case on the Cusimano case.

As to the quantum, Goldman's injuries are described as a contusion and swelling of the shoulder joint and a fracture of the shoulder blade, the fracture extending from the upper border downward into the body of the blade towards the shoulder joint. The expenses incurred for services of a doctor and for drugs amounted to $81. The judge below allowed $1,000 for pain and suffering. Under the circumstances we believe the proper award was made; consequently, and for the reasons herein assigned, the judgment appealed from is affirmed.

———

JANVIER, J., dissenting. I do not agree with my associates in their opinion that Burvant, owner of the automobile which caused the damage, should be held responsible because I am convinced that, at the time of the accident, the chauffeur, Duplesis, was not acting within the scope of his employment. While I agree thoroughly with the majority opinion in its findings of fact, I desire to restate briefly the circumstances with regard to whether or not the chauffeur was acting within the scope of his employment.

The owner of the car, Mr. Burvant, had instructed the chauffeur, Duplesis, to drive Mrs. Burvant to a spot convenient for walking to Canal street, so that she might view the carnival parade and to lock the car and to go to the parade. (See testimony of Duplesis, chauffeur, page 20, and of Mrs. Burvant, page 3.) The chauffeur drove to a point on Iberville street and, under orders of Mrs. Burvant, got out of the car, locked it, and walked with her a

short distance towards the route of the parade.

Either designedly, or accidentally, he became separated from her in the crowd and decided to go back to the car and to drive it to a poolroom some distance away and for a purpose with which Burvant, the owner of the car, was in no way concerned. Thereafter he started back to replace the car where it should have been and, at the request of certain of his friends, was riding them back towards that place, when the accident occurred.

My associates are of the opinion that, at the time of the accident, Duplesis, the chauffeur, had merely deviated from the route or course contemplated by the master and that, therefore, the master should be held responsible under the doctrine of those cases which hold that a mere deviation from a route does not result in the servant's stepping outside of the scope of his employment. I well know that in this state it has been held that, if a master sends his chauffeur out on an errand and the servant deviates from the proper route and undertakes to carry out some purpose of his own, after that purpose has been carried out and he has commenced to return to his master's work, he then steps back into his character as an employee of the master, and that thereafter the master is liable for his actions, but this is because, when the master sends the chauffeur out, he knows that he must return and it is comparatively unimportant whether the chauffeur returns by the direct route or by another longer or more circuitous one. It is within the contemplation of the master that he must come back home and, therefore, while he is coming back home, wherever it may be from, the master is liable. Here, I am convinced, there was no deviation from a course or a route because there

was no course; there was no route. The wife was authorized to give the chauffeur instructions, and she had instructed him to place the car in a particular spot and to lock it and leave it there. He did this and his connection with the car terminated as thoroughly and as completely as if he had been discharged.

If the master is liable under such circumstances, then it will be almost impossible for a master to escape liability, no matter how flagrant may be the violation of orders by the chauffeur. Let us assume that a master employs a chauffeur who drives him to his office in the morning and that the master instructs the chauffeur to drive the car into a public garage and to leave it there and to meet him there at 5 o'clock in the afternoon to drive him home. Let us further assume that the chauffeur, after leaving the car, goes back to the garage, takes the car out on a mission of his own, and, after completing his mission, while on his way back to the garage to replace it so that the master may not know that he has taken it out, negligently causes damage. Is the master liable under those circumstances? It is my opinion that to so hold establishes a most unsound doctrine and I do not believe that the courts of this state have so decided.

There are two decisions rendered in cases involving facts very similar to those presented here. One of them, Bowles v. McGlasson, 5 La. App. 367, my associates feel is controlling here. The other, Glass v. Wise & McAlpin, 155 La. 477, 99 So. 409, seems to me directly in point and, in my judgment, leaves us no other alternative than to correctly decide that the master is not liable. In the Bowles case the facts were these:

The defendant, master of the chauffeur, was ill with pneumonia. One evening the

chauffeur drove to her home a registered nurse employed by defendant. On the way home the nurse went to a grocery and bought some fruit and when the car reached her home she gave the fruit to the chauffeur and told him to take it to his wife, who was sick at the Charity Hospital. The chauffeur took the fruit to his wife at the hospital and, after delaying considerably in his route home, negligently caused damage while bringing the car back. This court held that when the chauffeur left his master's residence to drive the registered nurse to her home, he was acting within the scope of his employment. The court, however, found that after leaving the home of the nurse and while going to the hospital the chauffeur was not acting within the scope of his employment, and that, had the accident happened then, the master would not have been liable, but that it was the duty of the servant to return the car and that, thus, no matter how great may have been the prior departure from his line of duty, nevertheless the servant, immediately upon turning towards home with the intention of replacing the car, stepped back into his character as a servant of the master and that thereafter his negligent acts rendered the master liable.

I call attention to the fact that when the servant commenced the errand he was acting within the scope of his employment, whereas here, when the servant returned to the parked car and undertook an errand or mission of his own, the master was in no way concerned therein.

In the other case, Glass v. Wise & McAlpin, the very point which I make here was discussed and the court decided the case on that theory, to-wit: That since the servant took out the car without orders from the master, he did not act within the scope of his employment in doing so and that, therefore, his conduct did not constitute a mere deviation from duty. In that case the facts were that a chauffeur was employed by a grocery company. On one occasion, when he had no deliveries to make and when he was not sent out by anyone authorized to send him, he took the car for a purpose of his own, and, while completing this purpose, and while also on the way back to the master's place of business, negligently caused damage. The Supreme Court held that the master was not liable.

I think the facts of the case at bar bring it squarely within the doctrine announced in that case. Here the chauffeur's connection with the car terminated when he parked it under instructions of Mrs. Burvant and there was nothing more for him to do than to meet her at the car after the parade. The error into which I think my associates have fallen results, I believe, from the fact that they have treated the duty of the chauffeur as a continuing one from the time he left the Burvant residence until he returned, whereas I view it as having completely terminated when he parked the car. I concede that the fact that the friends of the chauffeur were riding in the Burvant car is of no importance. The question to be determined is: Was he acting within the scope of his employment? If he was, and, in doing so incidentally carried out a purpose of his own, then his own individual purpose would not affect the situation.

In Cusimano v. Spiess Sales Co., 153 La. 551, 96 So. 118, the court held the owners of the automobile liable because there was a mere deviation from the route or course of employment.

It seems to me that part of the reasoning in Black v. R. I. A. & L. R. Co., 125 La. 105, 51 So. 82, 84, 26 L.R.A. (N. S.) 166, is di-

rectly in conflict with the reasoning in Glass v. Wise & McAlpin, supra, because the Glass case holds that, if the chauffeur takes the car and has no purpose of the master to serve, he is not acting within the scope of the employment of the master, either in going out or in returning, whereas the Black case holds that, though the locomotive crew which surreptitiously took the locomotive out on a "joy ride" was not acting within the scope of their employment, nevertheless it was their duty to return the locomotive, and, since the accident happened on the return trip, the master, to-wit, the railroad company, should be held liable. At any rate the broader ground on which that case was decided was, as discussed in Cusimano v. Spiess Sales Co., supra, that a locomotive is in the nature of a dangerous agency and that a railroad corporation which accepts a franchise to build tracks and to operate locomotives thereon and accepts the right of eminent domain is placed under the obligation of seeing, at its peril, that locomotives on those tracks be not negligently operated. That this seems to have been in the minds of the members of the court to a considerable extent is indicated by the following language:

"The broader, and as it seems to us correct, view of the case presented is that defendants, being vested with a franchise (that is to say, a privilege conferred upon them by the state, and not enjoyed by citizens generally of common right) by virtue whereof they were authorized to lay their tracks across a public thoroughfare in an incorporated town, and to operate cars propelled by steam power thereon, incurred certain correlative obligations, and among them the obligation to use their franchise with due regard to the public safety.

\* \* \* \* \* \*

"Summing up our conclusions, upon the law of the case, we are of opinion that: "1. A corporation exercising a franchise to operate steam cars on tracks crossing the streets of a town incurs the correlative obligation to use such privilege with due regard to the public safety and to maintain its tracks in a safe condition, and it cannot escape liability for failure to discharge such obligation by transferring, or attempting to transfer, it to an employe or other person."

\* \* \* \* \* \*

"4. The right to operate a steam locomotive on, or across a street in a town involves the use of an agency highly dangerous to life, limb, and property, and the responsibility for the exercise of such right cannot be shifted by the corporation in which it is vested to the person, who, by its authority, actually exercises it."

My views are, then, that a master should be held liable where the accident occurs while the servant is returning the car to its proper place, if, in taking it away from its proper place he was acting under the instructions of the master, but that the master is not liable, even when the servant is returning the car to its proper place, if, in taking it away from its proper place, he was not acting within the scope of his employment, and I believe that a careful reading of the various decisions to which I have referred will leave no other conclusion.

The fact that to so hold in this case might have the unfortunate result of preventing ultimate recovery by the person receiving injuries without fault on his part, while regrettable, should not be given consideration. It was held that the Yellow Cab Company is not liable and with this conclusion I agree. If it is held that Burvant, the owner of the automobile, is not liable, as I believe it should be, then the only liability would be in the chauffeur of the Burvant car. That no recovery can be obtained from him because of financial irresponsibility is an unfortunate circumstance, but one with which we cannot be permitted to concern ourselves. I respectfully dissent.