### MANCUSO v. HURWITZ–MINTZ FURNITURE CO.

#### No. 16911.

Court of Appeal of Louisiana. Orleans.
June 13, 1938.

Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellant.

Cyril F. Dumaine, of New Orleans, for appellee.

JANVIER, Judge.

At about 11:15 o'clock on the night of March 25, 1937, a motor truck of defendant partnership crashed into a building owned by Charles Mancuso, located on the uptown river corner of Washington Avenue and Johnson Street.

Alleging that the truck was, at the time, being operated by Louis St. Cyr, an employee of defendant partnership, and that

the said employee was acting within the scope of his employment and that the crash was caused solely by the negligence of the said employee, Mancuso brought this suit and prayed for solidary judgment against the said partnership and the members thereof in the sum of $201.30, the estimated cost of repairing the damage which resulted.

Defendants denied that a truck belonging to them was involved in the accident and, in the alternative, they averred that should it appear that the truck which had caused the damage belonged to them, it was not at the time being operated by their employee, St. Cyr, and also, in the alternative, they alleged that in the event that it appeared that St. Cyr was operating the truck at the time, he was not then acting within the scope of his employment.

That the damage was caused by negligence of the driver of the truck there can be no doubt and there seems to be no controversy concerning the quantum. Defendants, on the trial, admitted that the truck involved was their property, so that only two questions remained when the matter was submitted below:

(1) Was the truck operated by St. Cyr, and

(2) If it was being operated by him, was he acting within the scope of his employment.

There was judgment for plaintiff as prayed for. Defendants have appealed.

We entertain no doubt at all that it was an employee of the partnership who was operating the truck at the time.

When Mancuso, hearing the crash, ran out of his building and saw the driver alighting from the truck, he asked: "Who you working for", and received the answer: "Hurwitz-Mintz Furniture Company".

Edward Montz, living nearby, saw the truck as it first "side-swiped" his automobile and then crashed into the building. He saw the name "Hurwitz-Mintz" on the truck and on the next day called on Mr. Hurwitz in an effort to obtain the "job" of hauling the truck back to its garage. He says that Mr. Hurwitz told him that on the night before "the truck driver rang him up after the accident and said that he was in an accident".

Police officer Eskine testified that in investigating the accident he had been told by Mr. Hurwitz that his truck driver had called him up and had told him about the accident and he also stated that Mr. Hurwitz had given to him, Eskine, the negro's name and address.

St. Cyr, the employee, was never found, so that we have not before us his testimony, but from what is in the record we have no hesitation in concluding that the driver was the now missing St. Cyr.

The alternative defense that the driver of the truck at the time was not acting within the scope of his employment is based on the following facts, which we think are clearly established: St. Cyr and a helper bearing the name, Willie Sims, had been sent out during the day to deliver furniture and to "pick up" from customers other pieces of furniture for return to the store. At about 3:00 or 3:30 o'clock in the afternoon they crossed the Mississippi River to deliver certain articles to customers on the West side of the river. They completed this work and returned to the East side of the river via the 6:00 o'clock Jackson Avenue Ferry. They had nothing more to do on that day and were on their way back to the garage situated at Bourbon and Conti Streets. They proceeded out Jackson Avenue to Dryades, down Dryades to Terpsichore, thence to Rampart, thence to Erato and, when they were only a few squares from their destination, Willie Sims left the truck, since he was then very near to his home. But obviously St. Cyr decided that he would not return the truck at that time, but would use it for purposes of his own. We say this because, though there is no proof on the subject, there is proof of the fact that, though there were no more duties for him to perform and though, at this time—about 6:30 or 7:00 o'clock—he was only a few squares from the garage and headed towards it, the accident occurred more than four hours later in a different part of the city, at least two miles from the garage. The fact that, at the time of the accident, the automobile truck belonging to defendants was being operated by defendants' employee, places upon them the burden of proving that he was not acting within the scope of his employment; or, to state the matter differently, these facts raised the presumption that he was acting within the scope of his employment.

"We may say, however, that the great weight of authority, both from text-writers and the decisions of the highest courts of the states, seem to recognize the rule that, in an action for an injury or damage inflicted by an automobile, an allegation and

proof showing the ownership of the automobile, and that it was being operated at the time by an employee of the owner, is sufficient to make out a prima facie case and to raise the presumption that the servant was acting within the scope of his employment, and that the burden is then thrown on the owner to show to the contrary. See list of cases noted in L.R.A.1918D, 924. See, also, list of cases noted in Berry, Automobiles, beginning at page 1011." May v. Yellow Cab Company, Inc., 164 La. 920, 114 So. 836, 838.

■ Furthermore, it appears from the evidence that, at the time of the crash, St. Cyr stated that he was on his way back to the garage, and the direction in which, at the time, he was headed, might be said to have been slightly more towards than away from the point at which the automobile should have been stored, and this fact makes it necessary that there be applied the doctrine which is established in this state that, if such an employee leaves his employer's place of business on business of the employer and then engages upon an enterprise or excursion of his own—although while, on the outward part of his individual excursion, he is not considered as acting within the scope of his employment—as soon as he turns about and starts back towards the place at which he should have been or towards the route along which he should all the time have been proceeding, he at once is considered as again acting within the scope of his employment.

It is well established that there are two all-important questions in cases of this character: First and foremost, whether the vehicle was initially taken for the purpose of serving the interests of the master. If not, then the master is not liable whether the injury is sustained on the outward or on the homeward journey. James et al. v. J. S. Williams & Son, Inc., 177 La. 1033, 150 So. 9. Second, if the initial taking of the vehicle was in the interest of the employer, but a side trip or diversion was made solely in the interests of the employee, whether the injury was sustained on the outward or the homeward part of the said trip is important to determine because it seems to be equally well settled that, if it occurred after the employee had completed his individual errand and had turned back towards the place at which he intended to re-enter upon his duties, his master is liable for his actions as soon as the turn is made. Cusimano v. Spiess Sales Co., 153 La. 551, 96 So.

118; Goldman v. Yellow Cab Co., 17 La. App. 450, 134 So. 351. In the Goldman Case the Supreme Court refused to issue a writ of certiorari although in this court there had been a dissent, which accentuated the fact that the case presented squarely the question of when an employee, who diverts from his duties to engage upon an enterprise of his own, re-enters his master's service sufficiently to render the master liable for his tortious acts. It was held here that (page 353) "the chauffeur started upon an errand of his master, and his private excursion was but a departure, consequently he re-entered his employer's service when he started upon the return trip * * *".

A consideration of the facts of that case shows the extent to which our courts have gone in applying that doctrine. There the employee had driven the master's wife to a point at which, under her instruction, the car had been parked and locked. She had told the employee to accompany her on foot to a point a block or so away. He had intentionally departed, gone back to the automobile, unlocked it and engaged upon an errand of his own. After the completion of his own enterprise, he attempted to return the car to the place at which it should have been, so that his master's wife would not know that he had taken it at all. Before he returned it, the accident occurred. It was contended that he had not, at the time, been acting within the scope of his employment. This court held that he had and the Supreme Court refused a writ.

The facts of the case at bar seem to bring it squarely within the doctrine of the Goldman Case. St. Cyr, the employee, had taken the truck out initially in the interest of his employer. Before returning it he had used it on a mission of his own and, on completing his mission, had turned towards his employer's garage. Under the doctrine of the Goldman Case the master is liable. It is true that, when he diverted from his route, he had only a few squares to go to place the truck where it should have been and at this point he turned completely around and that he went to a place several miles away solely for purposes of his own. But the doctrine relied upon by plaintiff has been so well recognized in this state and has been extended to such extreme limits that we cannot find it possible to say that this case is not within the application of that doctrine. The case merely serves to illustrate the extent to which the doctrine has been extended.

We cannot understand the wisdom or soundness of the doctrine, but must acknowledge that it is well established and must yield our individual views.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, Judge.

I concur in the result.