The plaintiff, Mrs. Florence G'Sell, while a passenger in an automobile owned and operated by one Joseph Passuta, sustained personal injuries as the result of a collision between the car in which she was riding and a truck owned by the defendant, Mrs. Stephen L. Cassagne, and operated by her employee, one Henry Gottschalk.
The accident occurred at about 7:30 on the morning of January 30, 1941, at the intersection of Palmyra and South Lopez streets in the city of New Orleans. The Passuta car was proceeding down Palmyra street in the direction of the business section of the city. Upon its arrival at the corner of South Lopez street, which intersects Palmyra street at right angles, it proceeded over the crossing at which time it came into collision with the truck driven by Gottschalk which was travelling on South Lopez street in the direction of Canal street and which was driven into the intersection at the time the Passuta *Page 52 
car was traversing it. As a consequence of the impact between the two vehicles, plaintiff received personal injuries for which she seeks to recover damages, claiming that the accident occurred through the negligence of Gottschalk, who, it is alleged, was employed by the defendant and was acting within the course and scope of his employment at the time of the accident.
Defendant admits the happening of the accident but denies any and all responsibility for the injuries sustained by plaintiff, contending: (1) That her employee, Gottschalk, was without fault in the premises and (2) that she is not liable in any event because Gottschalk was not acting within the course and scope of his employment at the time of the accident but was using the truck on a mission of his own without her knowledge and consent.
After a trial in the district court on the foregoing issues, there was judgment in plaintiff's favor for the sum of $500. The defendant has appealed and plaintiff has answered the appeal praying that the judgment of the district court be increased to the sum of $4,000.
We direct our immediate attention to the defendant's contention that Gottschalk was not acting within the course and scope of his employment at the time of the accident for, if this proposition is well founded, the judgment in plaintiff's favor cannot be sustained.
Since defendant concedes that she is the owner of the truck and that Gottschalk was in her employ, a presumption arose that he was acting within the scope of his employment and the burden was upon defendant to establish by convincing proof that he was actually engaged upon a personal mission at the time of the accident. See May v. Yellow Cab Company, Inc., 164 La. 920,114 So. 836, and Mancuso v. Hurwitz-Mintz Furniture Co., La.App., 181 So. 814. The evidence submitted by the defendant to overcome this presumption reveals the following facts:
The defendant operates a towel and linen supply service in the city of New Orleans, doing business under the name of "Royal Linen Supply Company". In pursuance of this occupation, she owns a number of trucks and employs drivers or salesmen who use the trucks to deliver clean linens to her customers and to return them to her establishment when they are soiled. Gottschalk was employed as one of these drivers and salesmen. Defendant testifies that Gottschalk was a "route" man; that he and the other men working on the trucks were required each evening to bring the trucks to her place of business and "check in" for the business done by them during the day; that she had instructed these drivers that they were not to use the trucks on missions of their own and that, when the trucks were returned each evening, they were to be garaged on her premises.
Gottschalk declares in his testimony that he was well aware of Mrs. Cassagne's orders; that, when he "checked in" on the evening prior to the accident (December 29, 1941), Mrs. Cassagne asked him to work late and help "check in" some of the other drivers and that it was about 9:30 or a quarter of ten when he finished this work; that he was living in Jefferson Parish at that time; that he had missed the last bus which would take him home and that he felt that, since he had favored Mrs. Cassagne by working late, it would be alright for him to use his laundry truck to drive to his home because he had no other means of transportation. He admits that Mrs. Cassagne was not present at the time he took the truck and that he did not obtain her permission to use it. It was on the following morning, when he was returning the truck on his way to work, that the accident happened. Mrs. Cassagne was not aware of the fact that Gottschalk had used the truck until he informed her of the accident by telephone.
The evidence of Mrs. Cassagne, as to the instructions given by her to her truck drivers, is corroborated by the statement of Paul Cousins, who has been in her employ for some time. In truth, there is nothing in the record which casts any doubt or suspicion with respect to the veracity of the statements given by Mrs. Cassagne and Gottschalk and we, therefore, accept their evidence as genuine proof of the conditions under which Gottschalk had possession of the truck at the time of the accident.
It is clear from the foregoing facts that the defendant is not responsible for Gottschalk's negligence because, when Gottschalk took the truck to go to his home in violation of the instructions of his employer, he was acting on a mission of his own which was not completed until the truck was brought back to her place of business. Under Article 2320 of the Civil Code, an employer is not answerable for the damage occasioned by his employee unless the latter *Page 53 
is exercising the functions for which he is employed, or is acting in furtherance of the employer's business. The situation presented here is not novel in our jurisprudence. In reality, the facts of the case are practically identical with those appearing in James v. J.S. Williams Son, 177 La. 1033, 150 So. 9, 11. The decision in that matter controls the result to be reached here.
In the James case, the plaintiff sued to recover damages for personal injuries sustained by her as a consequence of being struck by a motor vehicle belonging to J.S. Williams Son, which was being operated by defendant's employee, one Roy Rhodes. The defense interposed to plaintiff's action was that Rhodes was not acting within the scope of his employment at the time of the accident. It appeared from the facts of the case that the defendant operated an undertaking establishment in the city of Shreveport and, in the conduct of its business, used an ambulance which was kept at a garage situated on its premises. Rhodes and a man named Jemison were employed as helpers in the establishment; Rhodes being employed as driver of the ambulance which was used only in connection with defendant's business. On February 23rd at 5:30 p.m., after the day's work was done, Jemison requested Rhodes to take him home in the ambulance. Rhodes did so and, while on his way back to defendant's garage where he intended to store the ambulance for the night, he ran over plaintiff and injured her.
Under the foregoing state of facts, the Supreme Court held that the defendant was not liable because Rhodes was not acting for and on behalf of his employer at the time of the accident. The court said:
"Whether Rhodes took the car to subserve an `individual purpose' of his own, or whether he took and used it solely to accommodate Jemison, is not material. In either event, he was not using it `in the exercise of the functions' for which he was employed, and therefore the relationship of master and servant, or employer and employee, was suspended while the car was being so used, and the doctrine of respondeat superior applies `only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong, at the time and in respect to the very transaction out of which the injury arose'".
In that matter, the plaintiff contended that, while it was true that Rhodes was without authority to use the ambulance to bring Jemison home, the defendant was, nevertheless, liable because Rhodes had fully completed his unauthorized mission and that he had reentered his employment at the time of the accident because he was returning the ambulance to his master's garage. In other words, plaintiff relied upon the well-recognized doctrine of deviation which is applicable in cases where the servant, while engaged in the functions for which he is employed, temporarily abandons his employment by going upon a personal mission. The Supreme Court rejected this contention, holding that the doctrine relied upon was not pertinent to the facts of the case because Rhodes' use of the ambulance was unauthorized in its inception.
In order for the doctrine of temporary deviation to be applicable, it is necessary that the initial use made of the vehicle be in furtherance of the master's business. And, in such cases, the master is not responsible when the accident occurs while the employee is deviating for purposes not connected with his employment. It is only where the accident happens after the employee has completed his mission, and is returning therefrom to the business of his employer, that the master is held liable, for the doctrine is founded on the theory that, when the servant has completed the personal venture for which he temporarily turned aside and is returning to resume the duties of his employer, he is, while so returning, engaged in the business of his master. See Cusimano v. A.S. Spiess Sales Co., 153 La. 551, 96 So. 118; Goldman v. Yellow Cab Co., 17 La.App. 450, 134 So. 351; Matheny v. United States Fidelity Guaranty Co., La.App., 181 So. 647 and Mancuso v. Hurwitz-Mintz Furniture Co., supra.
But this doctrine is wholly without application to cases where the initial use of the automobile by the employee is unauthorized for, in such matters, he does not reenter his employment until the vehicle is restored to the place from which it was wrongfully removed. The Supreme Court clearly points this out in its opinion in the James case where the rulings in Black v. Rock Island A. 
L.R. Co., 125 La. 101, 51 So. 82, 26 L.R.A., N.S., 166; Cusimano v. A.S. Spiess Sales Co., supra; and Glass v. Wise McAlpin,155 La. 477, 99 So. 409, are discussed and distinguished. *Page 54 
Counsel for the plaintiff in the case at bar nevertheless maintain that, when Gottschalk was returning the truck to defendant's place of business on the morning of the accident, he had reentered his employment because he was on his way to work and that, therefore, the doctrine of deviation should be applied. And they argue that the facts of the case may be differentiated from those appearing in the James case on the ground that, in the James case, the employee was bringing the ambulance back "simply to restore it, not to begin using it and employing it as an incident to his work" as in the case at hand.
We think that the argument made by counsel is a futile attempt to provide a distinction between this case and the James case where no difference, in truth, exists. The ruling in the James case is predicated upon the fact that Rhodes used the ambulance of his master without the latter's consent for the accommodation of a fellow employee. The use of the ambulance was unauthorized from its inception, just as the use of the truck by Gottschalk in the instant case was unauthorized when he took it to his home in violation of defendant's instructions. Hence, until the truck was returned to the garage where it was kept, Gottschalk, like Rhodes in the James case, did not reenter the performance of his duties as his unlicensed mission had not been completed.
Counsel for plaintiff rely heavily on the decision in Black v. Rock Island A. L.R. Co., supra, and contend that this case may not be distinguished from the holding in that matter. A reading of the opinion in the James case discloses that the Supreme Court has fully answered counsels' argument. There, the court, in discussing the Black case, points out that, while there are certain expressions contained in that matter which are not well founded and which have caused some confusion in the jurisprudence, the result reached by the court was correct for other broader reasons upon which the opinion is predicated. Later, in the recent case of Oliphant v. Town of Lake Providence,193 La. 675, 192 So. 95, the court, in approving the opinion in the James case, undertook to again discuss and distinguish the holding in the Black case and the unfortunate observations contained therein, which have apparently caused considerable misunderstanding as to the correct ground upon which that decision is founded. And still later, the court again differentiated the decision in the Black case in Maas v. Harvey,200 La. 736, 8 So.2d 683.
In view of the jurisprudence which is now well established in matters of this kind, we hold that, under the uncontradicted facts of the case, Mrs. Cassagne is not liable for the negligent acts of Gottschalk while he was engaged on the mission which resulted in the accident in the instant matter.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that plaintiff's suit be dismissed at her cost.