No. 22,921.

SAM JOHNSON, *Appellant*, v. THE CITY OF IOLA and M. L. WEBSTER, *Appellees*.

### SYLLABUS BY THE COURT.

NEGLIGENCE—*Pedestrian Ran Down by Motor Truck—Personal Injuries —No Negligence Shown.* The proceedings examined, and *held*, assignments of error relating to evidence received and rejected, instructions given and refused, and other subjects, are without substantial merit.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed November 12, 1921. Affirmed.

*F. J. Oyler, W. H. Anderson,* and *G. M. Lamer,* all of Iola, for the appellant.

*John W. Brown, Kenneth H. Foust, G. R. Gard,* and *S. A. Gard,* all of Iola, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages against the city and against an employee of the city, for personal injuries sustained by the plaintiff when run down by an automobile truck belonging to the city and driven by the employee. The verdict and judgment were for the defendants, and the plaintiff appeals.

Johnson v. City of Iola.

The city owns and operates a gas, electric light, and water plant. Its power house is located about a mile beyond the western limit of the city. Webster was foreman in the city's gas and water departments, and used the truck in the course of his employment. For greater convenience, he kept the truck at his own home, and sometimes did repair work upon it. On the evening of the accident Webster drove the truck to the power house to remove carbon from the cylinders and to grind some valves. When he started home, about 7:30 in the evening, the electric lights of the car went out. He lighted the oil lamps, and proceeded eastward along the south side of the macadamized portion of a highway leading to the city. The night was dark and stormy, and violent gusts of wind blew snow and dust across the road to such an extent that Webster's vision was sometimes completely obscured. On one of these occasions the truck struck the plaintiff, who was walking eastward, and inflicted the injuries complained of. The petition alleged that Webster was acting for the city in the transaction of its business, and was negligent in that he was driving without any white or bright light and at a dangerous rate of speed. With a general verdict for each defendant, the jury returned the following special findings of fact:

"1. At the time of the injury to the plaintiff, during what hours of the day did M. L. Webster's employment cover? A. From 8 a. m. to 5. p. m. except when on special duty.

"2. Was it any part of M. L. Webster's duty to take the car to the power house and work upon it? A. No.

"3. On the evening of the accident, did M. L. Webster go to the power house for his own convenience, or in the performance of a duty required under his employment? A. For his own convenience.

"4. Did M. L. Webster and the witness Stroupe turn up the oil lamps on the car just a short distance west of the place where plaintiff was injured? A. Yes.

"5. Were the oil lamps burning when the plaintiff was injured? A. Yes.

"6. At what rate of speed was the automobile going when it struck the plaintiff? A. Approximately 10 miles per hour.

"7. At the time plaintiff was injured, did the wind and drifting snow obstruct M. L. Webster's view in front of the car and prevent him from seeing the plaintiff? A. Yes.

"8. Were the lights on the car at the time of the accident the ordinary coal oil lights giving a white light through a clear, uncolored glass? If not, then what kind of lights were they and what color? A. Yes.

"9. At the time of the accident was M. L. Webster driving slowly and carefully because of the bad condition of the weather? A. Yes.

"10. At the time of the accident was the car driven at a dangerous rate of speed? A. No."

Webster told the whole story of the accident. When he left the power house the truck carried electric lights. Between the power house and the highway the electric lights burned out. He had no extra bulbs, and lighted the oil lamps. After driving some distance he stopped and turned up the lamp wicks. The oil lamps were put on the car to give light at night, were on the front of the car above the engine, had reflectors behind them, and gave clear white lights, visible under ordinary conditions a distance of three 350-foot blocks. Complaint is made of the statement that Webster did not have extra electric light bulbs with him, the argument being that the jury might be disposed to excuse use of insufficient light in driving home. This could not be, because the issue submitted to the jury was whether or not the lights met the requirements of due care at the time the accident occurred.

There was much evidence regarding Webster's relation to the city at the time of the accident, and his duties, general and special, were well established. Webster himself was examined, cross-examined, and reëxamined on the subject, and he told everything he did during the evening of the accident. The plaintiff then asked him this question: "Was that the last work you did for the city that evening?" An objection to the question was sustained, on the ground of repetition. It is argued the ruling was prejudicial because the answer would have shown Webster was working for the city. If the purpose of the question were to secure details of conduct, as the court and opposing counsel evidently understood, the witness had made it plain he had told all he did, and the objection was properly sustained. If the purpose were, as the plaintiff now seems to contend, to have the witness decide for the jury a principal issue in the case, the question was improper, and prejudice may not be predicated on the ruling forbidding an answer.

It is contended the court misdirected the jury in respect to the law governing responsibility of the city for Webster's acts. There was no dispute that the city supplied the car for Webster's use in the city's business, that Webster kept the car in

Johnson v. City of Iola.

his own garage, with knowledge and without disapproval on the part of the city, that he sometimes did repair work on the car, that on the day of the accident he went to the power house to remove carbon from cylinders and to grind valves, and that he was on his way home from the power house when the accident occurred. Repair work on the car, if needed, would benefit the city. The plaintiff seems to think that these facts were in themselves sufficient to make the city liable, and he requested that full instructions correctly stating the law of *respondeat superior* be modified accordingly. Not a single authority is cited in support of the plaintiff's position, and it is manifestly untenable. The subject, however, is no longer of consequence, because the material facts have been found, and this court is able to apply the law to them. Webster's duties for the day ended at 5 p.m., unless accident or other special circumstance made additional service necessary. It was no part of his duty, general or special, to take the car to the power house and there work upon it, and he went to the power house, not in performance of any duty required by his employment, but for his own personal convenience. The result is, he was outside the course and scope of his employment in going to the power house, and in setting out for home from that place.

The plaintiff contends the court misdirected the jury in stating one of the essentials to liability on the part of the city, as follows:

"That at the time of the injury there were no white or bright lights burning on the car or that the car was being driven at a dangerous and reckless rate of speed."

It is said the instruction ignored the statutory regulations relating to automobile lights. The subject is not material, because the city was not chargeable with Webster's negligence, if he were negligent, in the matter of lights; but beyond that, the plaintiff did not base his action on violation of the statute, and the instruction is in the language of the charge of negligence contained in the petition.

In discussing the subject of Webster's negligence, the plaintiff employs a method which renders his argument valueless. For example, it is said Webster testified his lights were such that he could not see the plaintiff more than twelve or fifteen inches away. Webster's testimony relating to the character of

his lights has been stated. There was other testimony that the lights were such they could be seen a distance of a quarter of a mile on a clear night. The reason the plaintiff was not seen until the car was upon him was that Webster's view was·obstructed by a blast laden with snow and with dust from the field north of the highway. Special findings of fact consonant with this testimony were returned, and the plaintiff's argument would be more persuasive if it took cognizance of the testimony on which the special findings and general verdict were rested.

The court gave an instruction relating to contributory negligence of the plaintiff. It is said there was no evidence on which to base the instruction. The assertion ignores the record. The subject, however, is not important, because the jury concluded Webster was not guilty of actionable negligence.

There were some discrepancies in the testimony, some responses to questions were to be interpreted, and the jury were obliged to solve the usual problems which arise in dealing with testimony. Their answers to the special interrogatories were in accord with the clear weight of the evidence.

Nothing else requires special mention, and the judgment of the district court is affirmed.