On Rehearing
 

 O’NIELL, Chief Justice.
 

 Having considered again the question propounded by the court of appeal, a majority of the members of this court are of the opinion that, under the facts stated, the Town of Lake Providence is not liable for the injuries caused by the negligence of the driver of the town’s automobile. The doctrine of respondeat superior is stated in the Civil Code, in the first paragraph of article 2320, as it is in the common law — thus :
 

 “Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.”
 

 The controlling phrase in this article is “in the exercise of the functions in which they are employed”. That means that employers are answerable for damages caused by their employees in the cases only where the damage is done while the employee is performing some duty which he is employed to perform. In this case, the young man who was driving the town’s automobile at the time of the accident was the eighteen-year-old son of the superintendent of the light and water plant operated by the town. The young man was not then using the car in or for any service that the superintendent was employed to perform. The superintendent had taken the car from his residence, where the car was kept, and had gone in the car to a garage to get his own car, which had been undergoing repairs; and the superintendent took his son along to drive one of the two cars back home. While at the garage the superintendent entered into a discussion with a dealer concerning the purchase of some tires for a truck that belonged to the town. While so engaged the superintendent directed his son to drive the town’s car back home and store it for the night, where it would be available in case he, the superintendent, should need it. It was while the son was driving the car home that it struck the plaintiff and injured her. The young man was not then in the employ of the town. The fact that on previous occasions he had worked on small extra jobs in the utilities department is a matter of no importance.
 

 In determining whether the town is answerable for the injuries we assume that the superintendent had authority to delegate to his son, or to any one else, the duty of returning the company’s car to the superintendent’s residence, after the superintendent had used the car for his own convenience in going to get his own car
 
 *793
 
 from the garage or repair shop. The important fact is that the son was not then performing any duty that his father was employed to perform. The son was merely rendering his father a service while the latter was engaged elsewhere, perhaps negotiating yet for the purchase of tires for the town’s truck. From the fact that the superintendent’s position or employment was what is called an all-time job, requiring him to be ready at all times to respond to an emergency ca.ll, it does not follow, as a proposition of law, that he was at all times in the actual performance of some duty or service for the town.
 

 The controlling feature of the case is that the purpose of the superintendent in taking out the town’s car on the occasion of the accident was not to render a service to his employer, but to serve his own convenience. It is true that the superintendent owed a duty to the town to return the car to the place where it belonged, after he had used it for his own personal purpose; but that duty was not one which arose from the contract of employment between the town and the superintendent. The same duty, to return the car, would have rested upon any one else who might have taken the car out for his own use — whether with or without the consent of the town or of the superintendent. The duty to return the car was the necessary consequence of its being taken out for the personal use of the superintendent. Hence the town is not answerable any more for an accident that happened while the car was being returned to the place where it belonged than the town would be responsible if the accident had happened while the car was being taken out for the personal use of the individual taking it out.
 

 The facts of this case bring it within tfte doctrine of the case of James v. J. S. Williams & Son, 177 La. 1033, 150 So. 9, quoted in the original opinion rendered in this case, to the effect that, when an employee has taken his employer’s vehicle out for the personal use or convenience of the employee, he is not acting any more within the scope of his employment when he is returning the vehicle than when he is taking it out. It is argued that that decision is in conflict with the decision rendered in Black v. Rock Island A. & L. Railroad Co., 125 La. 101, 51 So. 82, 84, 26 L.R.A.,N.S., 166. In Black’s case the employees of the railroad company were operating a locomotive and flat car for their own amusement, and, while they were returning the engine and car to the place whence they had taken them, on a dark night and without any warnings or lights ahead, they ran over and injured a pedestrian on a public thoroughfare. There are some expressions in the opinion rendered in the case to the effect that, although a servant is not serving his master when the servant is taking the master’s vehicle out for the servant’s own use, he is serving his master when he is returning the vehicle
 
 to
 
 the place where it belongs. But the court’ admitted that that might be considered a narrow basis on which to rest the decision; hence the court proceeded then to rest its decision upon a broader basis — thus:
 

 
 *795
 
 “The broader, and as it seems to us correct, view of the case presented is that defendants, being vested with a franchise (that is to say, a privilege conferred upon them by the state, and not enjoyed by citizens generally of common right), by virtue whereof they were authorized to lay their tracks across a public thoroughfare in an incorporated town, and to operate cars propelled by steam power thereon, incurred certain correlative obligations, and among them the obligation to use their franchise with due regard to the public safety. ■ ■ The implied condition upon which they were allowed to lay their tracks across a street which is open to the public was that they should keep the tracks in a safe condition, and that neither they nor those for whose acts they are responsible should operate their cars over them in a manner unnecessarily to endanger the lives or limbs of those who had the right to use the street.”
 

 The doctrine of the Black case is explained in the James case, and the Black case is there analyzed and distinguished from the James case. It would confuse matters if we should fail to observe the distinction now.
 

 The doctrine of the Black case is restated, substantially, in the American Law Institute’s Restatement of the Law of Agency, '§ 214, p, 471, under the rubric
 
 Failure of Principal to Perform Non-delegable Duty
 
 — thus:
 

 “A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other agent is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.”
 

 It is remarkable how like the present case was the case of Johnson v. City of Iola, 109 Kan. 670, 202 P. 84, 85, where the Supreme Court of Kansas, in 1921, decided that the city was not answerable for personal injuries inflicted upon a pedestrian by the foreman of the city’s gas and water system while he was driving the city’s truck home after using it “for his own personal convenience.” The facts are given in the opinion, thus:
 

 “The city owns and operates a gas, electric light, and water plant. Its power house is located about a mile beyond the western limit of the city. Webster was foreman in the city’s gas and water departments, and used the truck in the course of his employment. For greater convenience, he kept the truck at his own home, and sometimes did repair work upon it. On the evening of the accident Webster drove the truck to the power house to remove carbon from the cylinders and to grind some valves. When he started home, about 7:30 in the evening, the electric lights of the car went out. He lighted the oil lamps, and proceeded eastward along the south side of the macadamized portion of a highway leading to the city. The night was dark and stormy, and violent gusts of wind blew snow and dust across the road to such an extent that Webster’s vision was sometimes completely obscured. On one of these occasions the truck struck the plaintiff, who was walking eastward, and inflicted the injuries com
 
 *797
 
 plained of. The petition alleged that Webster was acting for the city in the transaction of its business, and 'was negligent in that he was driving without any white or bright light and at a dangerous rate of speed. * * *
 

 “Webster’s duties for the day ended at 5 p. m., unless accident or other special circumstance made additional service necessary. It was no part of his duty, general or special, to take the car to the power house and there work upon it, and he went to the power house, not in performance of any duty required by his employment, but for his own personal convenience. The result is, he was outside the course and scope of his employment in going to the power house, and in setting out for home from that place.”
 

 The case of Fox v. City of Syracuse, 231 App.Div. 273, 247 N.Y.S. 429, Id., 258 N.Y. 550, 180 N.E. 328, decided by the New York Supreme Court, Appellate Division, in 1933, is interesting in that the' city’s employee, in that case, who used the city’s automobile for his own private purpose, incidentally performed a service relating to his employment before returning with the automobile; but the court held, nevertheless, that the city was not liable for an accident that happened on the return trip. The ruling and the facts are stated in the head-notes, thus:
 

 “City held not liable for employee’s negligence causing automobile collision while returning from week-end visit, notwithstanding during visit he incidentally performed service relating .to employment.
 

 “City employee, while on customary week-end visit to beach solely for own private purposes, by accident met owner of tenement house on whom it was his duty as tenement house inspector to serve notice that lights required to be kept burning at night in halls used by tenants • in common were not kept burning, and gave customary oral notice. Thereafter city employee, while returning to city and driving city’s car, caused injuries in an automobile collision.”'
 

 In the case of Keeney v. City of Salem, 150 Or. 667, 47 P.2d 852, decided by the Supreme Court of Oregon in 1935, a policeman was directed by the chief of police Intake the mayor from the city hall to his home, twenty blocks away, in a car maintained by the city for the use of its police department; and on the way the car struck and injured the plaintiff. The court held that the city was not answerable for the negligence of the policeman who drove the car, because it was not within the scope of the employment of the police officers to see that the mayor got home all right when his day’s work was done. In the course of the opinion, Chief Justice Campbell, for the court, said:
 

 “There is no contention that the charter of the city of Salem authorized the municipality to furnish transportation for the mayor. • Neither is it claimed that the city-council ever authorized the police department to use a city automobile to convey the mayor to or from the city hall; nor is it asserted that it was within the scope of the authority of the city, through its governing body or any o.f its officers, to supply
 
 *799
 
 taxi service for the private ‘matter of convenience and accommodation’ of the mayor of the city.”
 

 In Blashfield’s Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 5, Ch. 84, § 3029, p. 175, it is said that an employee, who is in the habit, after his day’s work is over, although not required to do so by his contract of employment, of taking an automobile turned over to him for his use during working hours to a garage, and returning it to his employer's place of business the following morning, cannot be considered as doing an act incidental to the duties which he is employed to do, in merely returning the car in the morning, before his day’s work is to begin, to the place where he is to report for duty. And it is said that this rule applies even though in serving his own personal ends the employee accomplishes something which incidentally benefits his employer.
 

 The rule is stated in Mechem on Agency, 2nd Ed., Vol. 2, § 1898, p. 1474, thus:
 

 “If the servant or agent step aside from the principal’s business, for however short a time, to do some act of his own, not connected with the principal’s business, * * * the relation of principal and agent or master and servant is, as to that act, suspended.”
 

 And the rule is restated, specifically, by the American Law Institute in the Restatement of the Law of Agency, § 238, b., p. 535, thus :
 

 “The mere fact that the master habitually allows the servant to use the instrumentality, or even that the master maintains the instrumentality entirely for the use of the servant, does not of itself subject the' master to liability. The master is liable only when the instrumentality is being used by the servant for the purpose of advancing the employer’s business or interests, as distinguished from the private affairs of the servant. Thus, a master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes; nor is he liable if a group of servants, with his permission, use it for private purposes.”
 

 Our answer to the question propounded by the court of appeal is that the Town of Lake Providence is not subject to liability for any injury done to the plaintiff by negligence on the part of the driver of the automobile, under the facts stated. The right is reserved to the plaintiff to apply for a rehearing.
 

 FOURNET, BONDER, and HIGGINS, JJ., dissenting on rehearing.