8 So.2d 683

MAAS et ux. v. HARVEY et al.

No. 36510.

May 25, 1942.

Fred S. LeBlanc and Fred G. Benton, both of Baton Rouge, for applicant.

J. Oliver Bouanchaud, of Baton Rouge, and W. H. Sellers and Edward Rightor, both of New Orleans, for defendants and respondents.

O'NIELL, Chief Justice.

This is a suit for damages for injuries resulting from an automobile accident. One of the defendants, J. N. Harvey, while driving on a principal thoroughfare in Baton Rouge, and attempting to pass the plaintiffs' automobile, going in the same direction, struck the rear bumper and fender on the left side of the plaintiffs' car and caused personal injury to Mrs. Emile Maas, in the car with her husband, and caused damage to his car. He and Mrs. Maas therefore brought this suit against Harvey and his employer, the Louisiana Tractor and Machinery Company, who owned the car that did the damage, and against the liability insurer, the American Employers' Insurance Company. The district court gave judgment for $362.41 for Emile Maas and for $4,000 for Mrs. Maas, against the three defendants in solido. The Louisiana Tractor and Machinery Company and the American Employers' Insurance Company appealed to the Court of Appeal for the First Circuit, and that court reversed the judgment and dismissed the plaintiffs' suit. The court of appeal found that Harvey had not answered the suit, that no default had been entered against him, that the case had been tried with regard only for the two defendants who had answered the suit, and hence that the court of appeal was not concerned with the judgment against Harvey. The plaintiffs brought the case to this court on a writ of review. It is conceded by all parties that the only parties whose liability is in contest now are the Louisiana Tractor and Machinery Company and the American Employers' Insurance Company.

It was found by the court of appeal—and for the sake of argument is conceded by the Louisiana Tractor and Machinery Company and the American Employers' Insurance Company—that Harvey was grossly negligent in striking the plaintiffs' automobile in his attempt to pass it.

The question whether the American Employers' Insurance Company is liable de-

pends upon whether the Louisiana Tractor and Machinery Company is liable for the negligence of Harvey, under the doctrine respondeat superior.

The Louisiana Tractor and Machinery Company was a commercial partnership, composed of Matthew J. Carbone and George E. McNutt, engaged in business as distributors for the Caterpillar Tractor Company, and in selling and distributing allied equipment, such as draglines, wagons, attachments for tractors, and road machinery.

The policy of insurance was issued to George E. McNutt and M. J. Carbone, doing business as Louisiana Tractor and Machinery Company. Harvey was not an "Assured" under the terms of the policy. He was employed by the named assured as a salesman for the firm, engaged "particularly", as the plaintiffs alleged in their petition, "in selling tractors and road machinery for the firm". For the purpose of his employment he was given the use and custody of one of the firm's automobiles, which he kept at his residence, and used also for his personal affairs, and as he saw fit, all with the knowledge and consent of the firm.

The insurance policy in this case does not contain what is commonly called the omnibus clause, providing, in substance, that the unqualified word "Assured", in the policy, means not only the named assured but also any person using the car with the permission of the named assured. Instead of that broad definition of the word "Assured", the definition in the policy in this case restricts the meaning of the word "Assured" to the named Assured and the members of the firm—thus:

"III. Definition of 'Assured.' The unqualified word 'Assured' includes not only the named Assured but also any partner thereof if the named Assured is a partnership, and the president, vice president, secretary and treasurer of the corporation if the named Assured is a corporation, with respect to the operation, for business or pleasure, of any automobile owned by or in charge of the named Assured, except an automobile owned by such partner or officer or by a member of his family; but this provision shall apply only with respect to any such partner or officer who earns remuneration which is included in the total remuneration upon which premium for this policy is based, as hereinafter provided."

According to the coverage clauses in the policy, the liability of the insurer was merely to pay on behalf of the assured all sums which the assured should become obligated to pay by reason of the liability imposed upon the assured by law, for damages suffered by any person or persons, caused by accident and arising out of the operations defined in the policy and indicated by the specific premium charge or charges. The policy was subject, of course, to the provisions of Act 55 of 1930 (Dart's section 4248), giving to any injured person a right of direct action against the insurer, "within the terms and limits of the policy" and "subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured." These quotations are the words of the statute. Under the coverage

clauses, and according to the statute, therefore, there was no liability on the insurer to pay for any damages for which no liability was imposed upon the assured by law.

In the "Definition of Operations", in the policy in this case, the division entitled "Automobile Dealer or Repair Shop" is the division under which the operations covered by the policy are defined—thus:

"The ownership, maintenance, occupation or use of the premises herein designated, including the public ways immediately adjoining, for the purpose of an automobile dealer or repair shop, and all operations either on the premises or elsewhere which are necessary and incidental thereto, including repairs of automobiles or their parts, and ordinary repairs of buildings on the premises and the mechanical equipment thereof; and the ownership, maintenance or use of any automobile for any purpose in connection with the above defined operations, and also for pleasure use."

This phrase "and also for pleasure use" has reference to pleasure use by one of the "Assured", because the liability imposed by law upon the assured for damages caused by his operation of the car "for pleasure use" is the same as his liability for damages caused by his operation of the car for business purposes. And the liability of the assured is what determines the liability of the insurer. But, under the terms of this policy, the insurer was not liable for damages caused by the operation of the car "for pleasure use" by one who was not an "Assured", because there was no liability imposed by law upon the "Assured" for damages caused by the operation of the car by anyone else, unless the one operating the car was an employee of the "Assured" and was acting within the scope of his employment at the time of the accident.

In the case of Barrett v. Employers' Liability Assurance Corporation, 118 F.2d 799, the United States Circuit Court of Appeals for the Fifth Circuit affirmed a judgment of the District Court for the Eastern District of Louisiana in favor of the employer's liability insurance company in a case very similar in principle to the present case. We quote the syllabus—thus:

"Where salesman, employed by assured to sell automobiles, was driving assured's automobile purely for the pleasure of salesman and his guest with assured's permission but without any interest to assured, no liability would be imposed on assured for injuries to guest, and hence insurer woud not be liable therefor under liability policy expressly limiting coverage to payment on behalf of assured of sums which assured should become obligated to pay by reason of 'liability imposed by law' upon assured for damages.

"Provision of automobile liability insurance policy, extending coverage to 'pleasure use' referred only to such use by the named assured and would not render insurer liable for injuries resulting from operation of automobile by assured's employee solely for pleasure of such employee, for which damages no liability would be imposed upon assured."

The plaintiffs in the present case admit in their petition to this court for a writ of certiorari or review that the only question presented is whether J. N. Harvey was acting

within the scope of his employment at the time when his negligence caused the damage. The plaintiffs say in their petition:

"The one issue in the case is as to whether or not the said J. N. Harvey was acting within the scope of his employment at the time the accident occurred, so as to make [create] liability on the part of the defendant, Louisiana Tractor & Machinery Company, and its insurer, the said American Employers' Insurance Company."

The car which Harvey was driving at the time of the accident belonged to his employer, but remained always in his possession, to be used by him at any time for the purposes for which he was employed. He had also the personal use of the car, with the knowledge and consent of his employer, who paid for the gas and the maintenance of the car. But, according to Harvey's testimony—which was not contradicted in any way—he was not doing anything within the scope of his employment, or using the car for any business purpose, at the time when the accident happened. He was not then going on or returning from any mission concerning the business of his employer, and had not used the car for any such purpose during that day, as far as the evidence goes. The accident happened in a traffic jam, on North Boulevard, about 5:15 p. m. on Saturday, October 22, 1938. There was a football game to be played at a later hour that evening, at L. S. U., and the city was crowded with automobiles. Three young lady friends of Harvey's family came up from New Orleans on the bus that afternoon about three o'clock, to visit the Harveys and to attend the football game that night. He met them with the firm's automobile at the intersection where the bus line crosses the street on which he lived; and he took the ladies to his home. They purposely left their luggage on the bus to go on to the bus station in the central part of the city. About an hour after their arrival at Harvey's residence he and one of the young ladies went in the firm's car to the bus station to bring home the luggage. On their way home with the luggage, Harvey and the young lady stopped at a hotel for tickets for the football game, and, having obtained the tickets, they proceeded on North Boulevard towards his home. The congestion of traffic was such that the line of cars had to pause at frequent intervals. For some time the Maas car was behind the car which Harvey was driving, but eventually Maas drove around in front of Harvey; and what happened next is told by Harvey, thus: "When he came around me, I figured that he wasn't in any bigger hurry than I was, and so I started to go around him the next time the cars moved, and I scraped his back fender with my right front fender as I went to go around him." Not knowing then that he had done any harm, Harvey drove on to his home.

The plaintiffs' theory is that Harvey was acting within the scope of his employment whenever he was using his employer's car, even when he was using it for his personal use or pleasure, or for any other purpose having no relation to the employer's business. The plaintiffs rest their argument upon the fact that Harvey kept the car at his residence when the car was not in use, and had possession of it at all times, with the consent of his employer, and with the

privilege of using the car for any lawful purpose for which he might see fit to use it; and that the employer paid for the gasoline and for the upkeep of the car. Harvey's testimony in that respect was that the method of his employment, and his relations with his employer, and the privileges which he enjoyed, were similar to those of the several other salesmen employed by the firm. He worked for a monthly salary, without any commission on the sales he made, but with the prospect that he and the other salesmen might receive a bonus at the end of the year if the firm thought that the amount of the year's business done by the firm would justify it; but there was no promise or obligation on the part of the firm to pay the salesmen a bonus, or anything more than their monthly salaries. The relation between the employer and the salesmen did not imply that the employer was liable for any damages that might be caused by the fault or negligence of a salesman while using—for a purpose not within the scope of his employment—the automobile entrusted to him by the employer.

The facts and the principle on which the court of appeal rested its decision in this case are similar to the facts and principle on which this court rested its decision in Oliphant v. Town of Lake Providence, 193 La. 675, 192 So. 95, 101. In that case the damage was done by the operation of the town's automobile by the 18-year-old son of the superintendent of the light and water plant operated by the town. The young man was not using the car for any service which the superintendent was employed to perform; but the court found

that the superintendent had authority to delegate to his son the right to use the car for his personal purposes, and hence that the case should be dealt with as if the superintendent himself had been driving the car at the time of the accident. The theory advanced by the plaintiff in that case was exactly the same as that on which the plaintiffs are attempting to hold the employer liable for the negligence of the employee in this case; that is, that the employee was entrusted with the automobile to be used not only in the performance of the duties which he was employed to perform, but also for his personal use, and as he saw fit. He was employed by the month and was considered on duty at all times, ready to respond at any time to a call for his services. It was held that article 2320 of the Civil Code, declaring that employers are answerable for damages caused by the fault or negligence of their employees "in the exercise of the functions in which they are employed" was controlled by the phrase, "in the exercise of the functions in which they are employed." And, in answer to the argument that the employee should be considered as being always in the exercise of the functions which he was employed to exercise, the court said:

"From the fact that the superintendent's position or employment was what is called an all-time job, requiring him to be ready at all times to respond to an emergency call, it does not follow, as a proposition of law, that he was at all times in the actual performance of some duty or service for the town."

The court held in the Oliphant case that the only theory on which the employer

could be held liable for damages caused by an employee in the use of the employer's automobile for the employee's personal use or pleasure would be on the theory that an automobile is. a dangerous agency, and that the owner of an automobile is therefore at fault in entrusting it to the care of another person, even of a competent driver. Automobiles are not now looked upon as dangerous agencies, in the eyes of the law, and in the custody of a competent driver. The court distinguished the Oliphant case from Black v. Rock Island, etc., Railroad Company, 125 La. 101, 51 So. 82, 26 L.R.A.,N.S., 166, where several employees of the railroad company injured a pedestrian on a public street while the railroad employees were amusing themselves by running a locomotive and flat car up and down the railroad track in a New Year's celebration, on a dark night and without any warnings or lights ahead. The court rested its decision in that case mainly upon the broader foundation that the railroad company enjoyed a special privilege in its franchise to operate its trains over the public streets, and that the company thereby incurred the correlative obligation to use the franchise with due regard for the public safety. That phase of the Black case does not appear in the present case.

In the Oliphant case the court quoted from the American Law Institute's Restatement of the Law of Agency, section 238, b, p. 535, thus:

"The mere fact that the master habitually allows the servant to use the instrumentality, or even that the master maintains the instrumentality entirely for the use of the servant, does not of itself subject the master to liability. The master is liable only when the instrumentality is being used by the servant for the purpose of advancing the employer's business or interests, as distinguished from the private affairs of the servant. Thus, a master who purchases an automobile for the convenience of his servants is not subject to liability when a servant is using it for his own purposes; nor is he liable if a group of servants, with his permission, use it for private purposes."

To the same effect, in the Oliphant case, the court cited Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 5, Ch. 84, § 3029, p. 175, and Mechem on Agency, 2nd Ed. Vol. 2, section 1898, p. 1474, and the following decisions from other states: Johnson v. City of Iola, 109 Kan. 670, 202 P. 84, 85; Fox v. City of Syracuse, 231 App.Div. 273, 247 N.Y.S. 429, Id., 258 N.Y. 550, 180 N.E. 328; Keeney v. City of Salem, 150 Or. 667, 47 P.2d 852.

It is argued in the plaintiffs' petition to this court for writs of certiorari and review, with reference to Harvey's mission at the time of the accident:

"During the course of the trip [to the bus station], at the bus station, and at the hotel where he stopped to purchase football tickets, there was always a definite prospect for some profitable contact. Even his contact with his lady passenger could have led to a sale, or could have brought information out of which a sale might have been consummated."

When we stop to consider the limited number of persons engaged in occupations requiring the use of Caterpillar tractors, draglines, road machines, or any other of such impliments as Harvey's firm dealt in, the possibility that he might have met up with a customer for a Caterpillar tractor, or a dragline, or road machine, or some other of such impliments, or might have made a contact with such a prospect—on his trip to the bus station, or at the station, or in the hotel lobby where he went for the football tickets, or after leaving the hotel and up to the time when he ran into the plaintiffs' automobile—was too remote to make Harvey's employer liable for the damages caused by Harvey's running into the plaintiffs' automobile.

In their petition to this court the plaintiffs argue:

"Here it must be presumed that if Mr. Harvey had actually made a beneficial contact upon the trip during which the accident occurred the employer would undoubtedly be liable. * * *

"The test in such case is not whether any actual benefit to the employer developed out of the trip but whether when Mr. Harvey started the trip he was performing a duty or function within the actual or reasonable scope of his employment."

It is true that the test in this case is not whether any benefit to the employer resulted from the trip which Harvey made to the bus station and back to his home. The determining factor in the case is that when Harvey started on his trip to the bus station to bring home his guests' luggage he was not performing and

had no intention of performing any service within the actual or reasonable scope of his employment as a salesman for the Louisiana Tractor and Machinery Company.

Answering the plaintiffs' statement that it must be presumed that if Harvey had actually made a beneficial contact on the trip on which the accident occurred the employer would be liable for the resulting damages, we cite the case of Fox v. City of Syracuse, 231 App.Div. 273, 247 N.Y.S. 429; Id., 258 N.Y. 550, 180 N.E. 328. In that case the employee was furnished an automobile by his employer for use in the performance of the duties which the employee was employed to perform, but with the privilege of using the car also for his own use and pleasure. He went in the car on a customary week-end visit to a beach, solely for his own pleasure, and by accident met up with a person with whom it was his duty to transact certain business for his employer, and with whom he did then and there transact the business for the employer. Thereafter, while returning to the city in the employers' automobile, the employee collided with another automobile and caused personal injuries, for which his employer was sued for damages. The court rejected the demand on the ground that the employee's visit to the beach was for his own private purpose and pleasure and not for any purpose or with any intention of performing any service for his employer, and that the fact that he incidentally performed a service for his employer, within the scope of his employment, did not make the employer liable for the

damages resulting from the collision that occurred when the employee was returning from the beach.

The plaintiffs, in their petition to this court, quote from Blashfield's Cyclopedia of Automobile Law & Practice, Perm. Ed., Vol. 5, § 3014, p. 143—thus:

"Authority to use an automobile in the master's business implies authority to do things *essential* to the accomplishment of the task assigned to be performed. For example, a servant may be within the scope of his employment in taking the car to a place for water or for gasoline. [The italics are ours].

"Where an employee is intrusted with the possession and operation of a vehicle, with permission to use it in his discretion *in the business of his employer*, the latter will be held responsible for injuries inflicted upon another resulting from negligence in the operation of the vehicle *while using it in such business. In such à case* it is not necessary to prove that 'the employee was engaged in executing *any particular business* of his principal; it being sufficient to show that he was acting within the general scope of his employment."

We have italicized the words and phrases which show that the doctrine quoted from Blashfield's Cyclopedia is not at all applicable to the facts of the present case. The case cited in the footnote to

support the second paragraph quoted from Blashfield's Cyclopedia is the case of Vitelli v. Stanbrough, decided by the District Court of Appeal, for the First Appellate District, Division One, and reported in 118 Cal.App. 120, 4 P.2d 818. In that case the driver of the automobile, for whose negligence the employer was held liable, was the vice president and general manager of the employer corporation; and what the appellate court decided was that under the circumstances of the case the question whether the driver of the automobile was acting within the scope of his employment at the time of the accident "was one for the jury".

To hold the employer liable for the damages caused by the negligence of the employee in this case would compel the court virtually to abolish the distinction—which is universally recognized in applying the doctrine respondeat superior—between the cases in which the employee is acting within the scope of his employment, and the cases in which he is not so acting, at the time when his fault or negligence causes the damage.

The judgment of the court of appeal is affirmed.

FOURNET, J., concurs.

HIGGINS, J., concurs in the decree.