JANVIER, Judge.
On the evening of November 18, 1947, at about 10 o’clock, there was a collision between two automobiles near the intersection of Hibernia Avenue and Vermillion Street, in New Orleans. One of the cars was owned and driven by Vincent Graffag-nini and occupied by himself and his wife. The other car was owned and driven by Preston Martin, and with him in the car was William Lee. Both Martin and Lee were employees of George Engine Company, Inc. The automobile of Graffagnini was damaged and Mrs. Graffagnini sustained physical injuries.
Mr.- and Mrs. Graffagnini brought this suit for damages, praying for solidary judgment against Martin and George Engine Company, Inc., alleging that the accident resulted from negligence of Martin, and that at the time Martin, in driving the automobile, was acting within the course and scope of his employment by George Engine Company, Inc.
Martin filed various exceptions and then an answer in which he denied all negligence on his part and averred that the accident was caused by various acts of negligence on the part of Mr. and Mrs. Graffag-nini. We charged that Mrs. Graffagnini was at fault in not cautioning Graffagnini “to get over to the proper side of the road and to keep a proper lookout.” In the alternative that it should appear that Martin was in any way at fault, he averred that the proximate cause of the accident was the contributory negligence of Graffagnini and Mrs. Graffagnini. Martin then assumed the position of plaintiff in recon-vention, alleged that the accident had been caused by the negligence of Graffagnini and Mrs. Graffagnini, and prayed for soli-dary judgment against them in the sum of $1,0,50 for physical injuries sustained by him and the cost of repairing his automobile.
George Engine Company, Inc., denied all negligence on the part of Martin and especially denied that at the time of the accident Martin was acting within the scope of his employment.
In the Civil District Court for the Parish of Orleans, there was judgment in .favor of Graffagnini against Martin for $200, and in favor of Mrs. Graffagnini against Martin for $2,500, and rejecting the recon-ventional demand of Martin. There was also judgment in favor of George Engine Company, Inc., dismissing the suit of plaintiffs as against that defendant. Mr. and Mrs. Graffagnini have appealed from, the *414 judgment but only insofar as it dismisses their suit as against George Engine Company, Inc. Martin has not appealed.
Since the District Judge held Martin liable to the plaintiffs and yet dismissed the suit as against George Engine Company, Inc., it is obvious that he felt that the record showed that, at the time of the occurrence, Martin was not acting within the scope or course of his employment by George Engine Company, Inc. We therefore deem it advisable to first investigate that phase of the matter since, if Martin was not acting within the course and scope of his employment, it would follow that regardless of the extent or seriousness of his fault, the George Engine Company, Inc., would not be liable to plaintiffs.
The George Engine Company, Inc., is the distributing agent for a certain motor, used extensively in commerce and it maintains a shop for the servicing and repairing of those and other motors. Its place of business is at No. 1111 Jefferson Highway, which is in the Parish of Jefferson near the upper limits of the City of New Orleans. Preston Martin, who was driving his own car, lives at 3727 D’Hemecourt Street, in New Orleans, which is “In the Carrollton section, Midcity.” Lee, the other occupant of the Martin car, lives “in the Eighth or Ninth Ward” of New Orleans, “near Pontchartrain Beach.” These three locations are important to an understanding of the contentions of the parties.
On the morning of the day on which, at night, the accident occurred, Martin and Lee had been sent to Lockport, Louisiana, to repair a motor and had gone in Martin’s car since there was no company car available. They had been dispatched on that trip by Thomas Martin who was Preston Martin’s brother and who was assistant service manager of George Engine Company, Inc. They were unable t'o complete the job in one day and had left Lockport at about 7:00 or 7:30 at night to return to New Orleans. Before reaching New Orleans, Lee, the other employee, became ill. He says that he was “just sick at my stomach, just felt sick.” Instead of going back to the plant of the Engine Company, Martin and Lee stopped at a barroom or restaurant located about a block across the highway from the Engine Company and there Martin met his brother, Thomas, who, as assistant service manager, had, on that morning, given them the orders requiring them to go to Lockport. Both Thomas and his brother Preston say that Preston told Thomas that he was “checking out”, and would not return to the defendant’s place of business that night. After a short stop, Preston Martin and Lee left this barroom or restaurant and, without stopping at the plant of the Engine Company and without going to the residence of Preston Martin, went considerably farther than both and had almost reached the residence of Lee when the accident occurred.
The sole question presented on this phase of the case is whether under these circumstances Martin was still acting within the scope of his employment at the time of the accident.
The record leaves no doubt at all that it was quite customary for employees, when returning at night or after regular working hours, if they lived in locations which made it advantageous for them to go directly home, to do so and then to “check out” either by ’phone or by reporting the next day as to their time of stopping work and as to the mileage they had covered on the preceding day.
It is very evident also that where an employee used his own car, he was allowed mileage for the use of the car, but that the company maintained a “board” on which it posted the various distances to nearby points at which it frequently had work and that it used these distances to determine whether the mileages claimed by the employees were approximately correct. It appears that this was done both for the protection of the company against claims for excessive mileage by the employees and for the protection of the customers against excessive charges.
It appears that there was no duty in Martin to return Lee to his residence, unless it can be said that because of Lee’s sickness he should have done so from a “humanitarian” standpoint. Lee says that in going to and from work, it was usual for *415 him to “catch a ride with some of the fellows living out that way, or either ride the bus.” Martin says that on occasions when he had other employees with him, when the day’s work had ended, he took them home if he felt like it.
There is one circumstance which is pointed to by plaintiffs as evidencing the fact that Martin was acting within the scope of his employment. He, Martin, sustaining injuries himself and the employer, George Engine Company, Inc., apparently before a complete investigation had been made, referred him to the Insurance Company which carried the Workmen’s Compensation Insurance of the Engine Company. The Insurance Company paid for the medical services rendered to Martin. Of course it was not liable for those services if, at the time at which he sustained his injuries, Martin was not acting within the scope of his employment. The fact that medical services were paid for by the insurer is pointed to by plaintiffs as indicating that Martin was acting within the scope of his employment and as creating an estoppel against defendant to contend that he was not so acting. Counsel .for the defendant, George Engine Company, Inc., however, contend that for two reasons this fact does not have the effect contended for by plaintiffs. First, it is said that no estoppel is created since the legal position of plaintiffs was in no way prejudiced by the fact that the insurer of the Engine Company paid for the medical services rendered to Martin, and second, it is contended that the payment was made as the result of an error both of fact and of law. Counsel for the Engine Company, in their brief, call attention to subsection 5 of section 18 of the Workmen’s Compensation Statute, Act No. 20 of 1914, as amended, Act No. 85 of 1926, which reads as follows: “Neither the furnishing of medical services nor payments by the employer or his insurance carrier shall constitute an admission of liability for compensation under this act.”
They cite the following cases as authority for their contention that if a compensation payment is made as a result of error of fact, the employer is not estopped to contend that no compensation is due, i. e., Johnson v. Provencal Turpentine Co., 12 La.App. 78, 125 So. 321; Doby v. Canulette Shipbuilding Co., La.App., 156 So. 51; Burk v. Gulf Refining Co. of Louisiana, La.App., 171 So. 135.
It is true that though this accident occurred on November 18th, the accident report was not dated until November 21st, and was not sent to the insurer until November 24th, and that during that period the employer' should have been able to obtain full information as to just how and under what circumstances the accident occurred. But it is shown that the employee Martin had stated that the accident had occurred “while coming back from work,” and without a full investigation Martin had been sent to the Company physician.
•Neither the Engine Company nor the Insurance Company made a more complete investigation because it developed that Martin sustained no disabling injury, and therefore no compensation was due him. It appears that the employee who prepared and sent the report to the Insurance Company could not be produced to explain why he had stated that Martin was injured while returning from work. This employee was said to be “at Burbank, California or thereabouts,” and while counsel for defendant, the Engine Company, did not definitely say that he could not be located, that was obviously the purpose of his statement.
Mr. Mercer, the manager of the Claims Department of the Insurance Company said that when he found that no compensation was due, he made no investigation but paid the medical bill because of the statement in the report to the effect that Martin was injured “while coming back from work.” Mr. Mercer said that had he known the actual facts he would not have authorized the payment of that bill.
While there is in the record considerable confusion as to just what actually occurred when Preston Martin met his brother at the restaurant and bar across the highway from the Engine Company’s place of business, there is no room for doubt that there was such a meeting and that at that meeting *416 Preston Martin told his brother who, let us -repeat, as assistant manager of the Engine Company, had sent Martin out on a trip that morning, that he had returned and was “checking out.” If that occurred, and there is nothing to contradict the statement of the two brothers that it did occur, then after that time Preston Martin was acting not as an employee, unless it be that in taking Lee home, he was performing services of his employer.
It is not shown that there were in Martin’s car any tools or equipment of the company, and no other fact is shown except that he was taking Lee home, which, in itself, would not indicate that he was acting within the scope of his employment.
Even if it could be held that because, on certain occasions an employee is allowed mileage to and from his home instead of to and from the place of business of his employer when it is more convenient to go directly home on these occasions, he is acting within the scope of his employment, it cannot be claimed that in the situation which was presented here that rule would have had application, for two reasons — first, the rule could apply only when the employee has not checked out at the place of business, and has gone directly home, and second, because in this case Martin was not returning to his home but was going far beyond it to an entirely different part of the City.
We shall, for the moment, pass the question of whether the fact that Lee was sick throws a different aspect on the situation, and shall discuss several of the cases cited by the parties.
We are much impressed by the reason'ing of our Supreme Court in Maas v. Harvey, 200 La. 736, 8 So.2d 683. There a .salesman was furnished a car by his employer with the understanding that it was to be used in soliciting business for the employer, and that it might be used by the employee for his personal. purposes at other times. While he was using the car to go to a bus station to secure the baggage of some of his personal friends, there occurred an accident which resulted from his negligence. It was sought to hold the employer liable on the theory that when the employee used the car for his personal purposes “there was always: a definite prospect of some profitable contact.” The Supreme Court held that he was not acting within the scope of 'his employment and cited Fox v. City of Syracuse, 231 App.Div. 273, 247 N.Y.S. 429. In the Fox case an employee was furnished an auomobile by his employer, to be used in the business of the employer, but with the privilege of using it for his own purposes. He went on a week-end visit and during that visit, by chance, transacted business for his employer. While driving his car on the return from his week-end visit, he collided with another car and his employer was sued. In the Maas case, the Supreme Court of Louisiana, referring to the Fox case, said [200 La. 736, 8 So.2d 688]: “ * * * The court rejected the demand on the ground that the employee’s visit to the beach was for his own private purpose and pleasure and not for any purpose or with any intention of performing any service for his employer, and that the fact that he incidentally performed a service for his employer, within the scope of his employment, did not make the employer liable for the damages resulting from the collision that occurred when the employee was returning from the beach.”
 We construe this as an approval by our Supreme Court of the doctrine that if an employee in such a situation is using the car for his own purposes and merely, by chance; happens to do something which may incidentally benefit his employer, it does not result that he is acting within the course and scope of his employment. That is all that Martin was doing in the case at bar. He was using his own car for his own purpose, and merely, by chance, he was possibly, in a very minor way, benefiting the employer in that 'he was returning a sick employee to his home. We cannot see that it can be said that the employer was interested to such an extent as to justify the conclusion that Martin was acting within the course and scope of his employment.
Counsel for plaintiffs cite Duffy v. Hickey, 151 La. 274, 91 So. 733, 735, as *417 authority for the proposition that whatever an employee does, which may to any extent redound to the benefit of the employee, constitues an act within the scope of employment. In the Duffy case, the employee was a chauffeur employed to operate an automobile for hire. He was given a stand in the business section of New Or-' leans, and was required to return the car to that stand whenever it was. idle. He was not to use the car in going to and from his home for meals. On the occasion which gave rise to the litigation, he terminated a trip very close to his residence, just when it was “supper time.” He decided that (instead of driving the much greater distance to the stand and then going to his residence) it would ‘be best for all concerned for him to drive the much shorter distance to his residence, eat his supper, and then go to his ■ stand. The Supreme Court held'that, under those circumstances, it could be said that he was really acting within the scope of his employment. “ * * * To say that Flem-ming [the employee] was merely going to supper, and therefore was on a mission of ■his own, is to lose sight of the main purpose he had in view.” (Brackets ours.)
We think the situation here is different, for here Martin was operating his own car, he had completed his days’ work, he had checked out, and was on a mission of his own.
In Steinmetz v. Saathoff, Mo.App., 84 S.W.2d 437, an employee was returning his car to his employers’ place of business, with the knowledge of the employer, and in order that it might be used in the employer^ business. The Court held that the employee was acting within the scope of his employment, but we do not see any similarity between that case and the case at bar.
In Krousel v. Thieme, 13 La.App. 680, 128 So. 670, 672, the Court of Appeal for the Second Circuit held an employer liable where the employee was furnished a car by the employer for the purpose of soliciting sales of that or other cars of the employer. The employee had “checked out” in one of his employer’s cars and was on his way home when the accident happened. The defendant himself, however, testified that the employee had the right to sell cars wherever and whenever he could, and the Court said: “It is common knowledge that an automobile salesman, working on commission, has authority to ■ sell cars wherever and whenever he can, whether it be night or day.”
. The Court said that under these circumstances “Nugent [the salesman]'was at the time of the accident as much in the employ of Thieme as he was at any time during the day and that he was acting within the scope of his employment * * (Brackets ours.)
We believe that those facts distinguish this case from the'case at bar, but if they do not, then it appears to us that the decision is contrary to that reached in Fox v. City of Syracuse, supra, which was approved by our Supreme Court in the Maas case.
Counsel for plaintiffs cite several other cases, in each of which there was involved a slight departure from the route which the employee should 'have taken; in other words, a slight deviation. In each of them it was held that the employer might be held liable, even though the employee did not drive the car along the route contemplated by the employer. We do not think that those cases are in point.
We do not see that any importance can be attached to the fact that in the record there are to be found two repair-order cards of the defendant, George Engine Co., Inc., and that on one of these cards there are certain erasures. Counsel for plaintiffs contend that if these erasures had not been made there would have appeared entries which would have shown the mileage covered by Martin on the day in question, and that this mileage would have indicated that the company considered that Martin was in the scope of his employment at the time of the accident. The job on which Martin, had been engaged could not be completed on that day and other employees were sent to complete it on the next day. The entries referred to were made in regard to the mechanics Lee and Martin, and were erased from the card *418 covering their services. Other entries were made on the card covering the services furnished by Robin and Lyon. This may not be the explanation of the erasures, but whether it is or not the correct explanation, we cannot attach to them sufficient significance to overcome all of the positive evidence which' we find in the record.
Lee’s illness was not serious. He himself said that “he just felt sick.” Martin’s testimony convinces us that it was not because of this illness that he was driving Lee •home. He said that on other occasions he had driven employees home whenever he had time and felt like it, and it is quite obvious that on this occasion he was driving Lee home just because it was late and that Lee’s illness was not the primary cause. We think it quite apparent that it was of no great concern to the employer that Lee be driven to his home.
Our conclusion is that, at the time of the accident, Martin was not acting within the scope of his employment; consequently, there is no liability in the defendant, George Engine Co., Inc.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.